TAYLOR, GUARDIAN *v.* SCHLOTFELT.

4-9425                                    237 S. W. 2d 890

Opinion delivered March 26, 1951.

Rehearing denied April 16, 1951.

*G. B. Colvin,* for appellant.

*J. G. Moore,* for appellee.

HOLT, J.  The question presented by this appeal is the manner of reinvesting funds from the proceeds of certain United States Savings Bonds (now due) issued in the name of co-owners, one of whom is now incompetent and under guardianship.

The facts are not in dispute.  The parties stipulated that on January 12, 1949, Samuel H. Wilson (now 89 years of age) was declared incompetent and Baylor House duly appointed guardian.  House died May 20, 1949, and appellant, S. V. Taylor, was appointed guardian in succession.

It was further stipulated: ''Description of Bonds—No. D159738D—Date, Dec. 1939, Issued to Mr. Samuel H. Wilson, Mercer, Mo., or Mrs. Ruth Schlotfelt, Orchard, Iowa—$500.  No. M275405D—Date, April 1940, Issued to Mr. Samuel H. Wilson, Mercer, Mo., or Mrs. Ruth Schlotfelt, Orchard, Iowa—$1,000.  No. M390036D—Date, May 1940, Issued to Mr. Samuel H. Wilson, Mercer, Mo., or Mrs. Elizabeth Jane Wile, Trenton, Mo.—$1,000.

''That the present value of the estate of the incompetent is approximately $27,500 which includes the above described bonds and of which approximately $17,500 is in cash in banks; that Samuel H. Wilson is now 89 years of age.

'' * * * Said bonds being in the possession of S. V. Taylor, Successor Guardian, he has the power to cash the same without the co-owners joining in the request therefor.

'' * * * In the event of the death of Samuel H. Wilson prior to the cashing of said bonds, the co-owners would

become the absolute owners thereof, with power to cash same, without the request therefor being joined in by the personal representative of the estate of Samuel H. Wilson.

" * * * All of the bonds hereinbefore described were purchased with money furnished and belonging solely to Samuel H. Wilson and that neither Mrs. Ruth Ann Schlotfelt nor Mrs. Elizabeth Jane Wile furnished any of said money."

A letter in reference to the present case dated July 26, 1950, from the Commissioner of "Bureau of Public Debt, Treasury Department Fiscal Service, Washington," was a part of this stipulation and recited: "The regulations governing savings bonds do not permit the registration of a bond in the names of an individual and the guardian of an incompetent as co-owners. However, the registration in the names of an individual and an incompetent as co-owners with only a reference to the guardianship is permitted. Especially does it seem proper in this case where bonds were purchased by co-owners when they were both competent and the desired action is the reinvestment of the proceeds of the bonds whereby the interests of the incompetent are in no way prejudiced.

"The form of registration which would seem appropriate and perfectly proper under the present circumstances would be the following: 'A or B, an incompetent under legal guardianship of C.' "

One of the appellees, Mrs. Ruth Schlotfelt, testified that she was 42 years of age, a teacher, had known Mr. Wilson for about thirty years, knew that her name was on two of the bonds in question, that Mr. Wilson had shown them to her, and that "the first bonds were made out about the time I was married. These first bonds were for a wedding gift. The others were made out at later dates, as payment for helping him with his business. My husband and I made many 500 mile trips to help him or take him on trips."

Appellee, Mrs. Elizabeth Jane Wile, testified that she was 56 years of age and had known Mr. Wilson for

about 46 years. She knew her name was on one of the bonds in question and that "Samuel H. Wilson has stayed at my house off and on over 35-year period, sometimes as long as three months at a time. He gave me two cows once. He gave me chair once. He never bought any groceries. I suppose he put my name in the bonds for past favors."

Upon a hearing, the trial court ordered the guardian to convert the bonds into cash (§ 57-624, Ark. Stats. 1947) and "to reinvest the proceeds of said bonds in the same manner as the original bonds," that is, $1,500 to Mrs. Ruth Schlotfelt or Samuel H. Wilson, incompetent, under the legal guardianship of S. V. Taylor, and $1,000 to Mrs. Elizabeth Jane Wile or Samuel H. Wilson, incompetent, under legal guardianship of S. V. Taylor.

As indicated, appellant questions the correctness of this order.

We hold that the order and judgment of the trial court was correct and should be affirmed.

The bonds in question were issued to co-owners, (permitted under the Regulations governing United States Savings Bonds, Department Circular No. 530 (as revised) § 315.4 (a), subdivision (2)) and had they become due before Mr. Wilson became incompetent, could have been cashed by either co-owner without consulting the other, or paid to both co-owners upon their joint request (§ 315.45 (a) of above Circular 530).

We think there can be no doubt but that Mr. Wilson intended to make a gift of these bonds to the appellees and that they should receive the proceeds at his death, unless he elected to cash them during his lifetime and use the proceeds. As indicated, according to the Regulations, the death of a co-owner operates to complete the gift to the other co-owner.

Section 315.45 (c) provides: "Payment or reissue after the death of one co-owner.—If either co-owner dies without the bond having been presented and surrendered for payment or authorized reissue, the surviving co-owner will be recognized as the sole and absolute owner

of the bond and payment or reissue, as though the bond were registered in his name alone, will be made only to such survivor. If the survivor requests reissue, he must present proof of the death of the other co-owner."

If, as appears, the administrator of a deceased co-owner, cannot cash the bonds, then, we think, it would follow (in the absence of a contrary Government rule or regulation) that the guardian of an insane co-owner cannot cash the bonds, (except for reinvestment as above indicated) unless the proceeds from said bonds were needed in the care and support of Mr. Wilson, his ward.

The above Treasury Department Rules and Regulations have the same force and effect as federal law and are controlling over state laws. We said in *Meyers* v. *Hardin, Administrator,* 208 Ark. 505, 186 S. W. 2d 925, that "Treasury regulations * * * not being in excess of the power conferred by Congress have the same force and effect as federal law and are controlling over any State law that may be in conflict."

Our holding here is in accordance with the interpretations above of said Federal regulations, made by the Treasury Department in this case.

Accordingly, the judgment is affirmed.

GRIFFIN SMITH, Chief Justice, dissenting. Regulations of the U. S. Treasury Department governing payment of the class E bonds in question here provide that during the lives of both co-owners "the bond will be paid to either co-owner upon his separate request without the signature of the other co-owner."

Admittedly the two bonds involved in this litigation are in the guardian's possession, and they have matured. It is the guardian's duty to act for the best interest of his ward. Taylor may cash the bonds, (Regulations, subpart J, § 315.38) and this action may be taken irrespective of co-owner claims, because Wilson is alive. Having received money in lieu of the bonds, the guardian should apply to the court for investment directions.

The majority opinion says "there can be no doubt that Mr. Wilson intended to make a gift of these bonds to

the appellees and that they should receive the proceeds at his death.'' The reasoning is unsound because, in effect, it makes a will for the incompetent. What Wilson very likely intended was the consummation of an arrangement whereby the co-owners would receive the bonds in the event of his death before the appreciation securities became due—that is, within ten years. We have only a slight hint of what he *might* have done but for the intervention of mental incompetency. Why should we prejudge this mere possibility and in effect determine a question of fact on the meager testimony of the interested witnesses?

Mr. Justice GEORGE ROSE SMITH joins in this dissent.