**67 So.2d 547**

**Succession of GLADNEY.**

**No. 41055.**

July 3, 1953.

Rehearing Denied Oct. 6, 1953.

Seals, Atkins & Robinson, Homer, for defendants in rule and appellants.

Campbell & Campbell, Minden, Blanchard, Goldstein, Walker & O'Quin, Shreveport, for appellees.

MOISE, Justice.

The opponents, Mrs. Ruth Featherston and F. Aylmer Gladney, prosecute this appeal from judgments (1) maintaining exceptions of no cause of action filed on behalf of Mrs. Mary Hays and James K. Gladney to the demands asserted by the opponents to the rule to show cause why the inventories filed herein should not be approved and homologated, and (2) making the rule absolute and sending the heirs into possession.

Mrs. Emma K. Gladney, widow of Frank A. Gladney, died intestate at her domicile in Claiborne Parish, La., on August 30, 1951, being survived by four children, James K. Gladney, Mrs. Ruth Featherston, Mrs. Mary Hays and F. Aylmer Gladney. The total inventoried value of her estate, including property situated in the State of Texas, amounted to $88,079.47.

By rule issued on March 18, 1952, at the instance of the attorneys for the heirs and the notaries appointed to make the inventories, the heirs of the decedent were directed to show cause why the inventories of the estate should not be homologated and the heirs placed in possession of the property described therein. Thereupon, Mrs. Ruth Featherston and F. Aylmer Gladney, two of the four children of the deceased, the opponents to the rule, answered, asserting that certain United States Bonds found in a safety deposit box held in the name of the deceased at the time of her death should have been included in the inventories filed as forming a part of the decedent's estate, and, in the alternative, should it be determined that the bonds referred to were not property includable in the estate of deceased, that Mrs. Mary G. Hays, as a forced heir, should be ordered "to effect a collation" of the bonds registered in her name individually and the bonds in her name as co-owner with the deceased, described in the petition as bonds of Series "E" and Series "G".

Opponents allege that the bonds total $33,475, of which $25,000 were co-ownership bonds payable to Mrs. Emma K. Gladney, or Mrs. Mary G. Hays; $3,475 of which are in the name of Mrs. Mary Gladney Hays, and $5,000.00 of which are payable to Mrs. Emma K. Gladney or Mrs. Hays' children.

Opponents further allege "that no act indicative of a donation inter vivos has been manifested on the part of Mrs. Emma K. Gladney, deceased, and that no act of acceptance was exercised on the part of Mrs. Mary Gladney Hays, prior to the death of Mrs. Emma K. Gladney, deceased."

The allegations of fact are taken as true for the purpose of the exception of no

cause of action. Herring v. Breedlove, 222 La. 1088, 64 So.2d 441 and Breaux v. Laird, 223 La. 446, 65 So.2d 907.

The opponent appellants contend that the United States Savings Bonds create a contractual relationship between the purchasers and the U. S. Government, but that the Louisiana law on devolution of property must be applied, citing Succession of Land, 212 La. 103, 31 So.2d 609; Succession of Geagan, 212 La. 574, 33 So.2d 118; and Winsberg v. Winsberg, 220 La. 398, 56 So. .2d 730.

Opponents also contend that United States Savings Bonds registered in co-ownership form constitute a donation inter vivos to the co-owner who did not pay a consideration therefor, and cite the following authorities to bolster this position: U. S. Treasury Regulations, §§ 315.45 and 315.46, and Winsberg v. Winsberg, supra.

Exceptors argue that the situation is the same as though Mrs. Gladney had died intestate and that the bonds which were registered in her name, and that of Mrs. Hays as co-owner had been bequeathed to the surviving co-owner by special legacies contained in her last will, and that, therefore, opponents have no right to claim collation since there is no such right in respect to donations mortis causa by which the gift itself shows that it was intended as a special advantage to the favored legatee.

■ The conclusions of exceptors as to the meaning of a written agreement and conclusions of law are not admitted by an exception of no cause of action.

Exceptors further argue that the bonds found in the safety deposit box of the deceased, made payable to her daughter, Mrs. Hays, alone, belonged to Mrs. Hays from the moment of issuance and if they were purchased with funds supplied by the deceased, the advancement of the funds constituted a manual gift perfected upon issuance of the bonds.

■ While the above contentions are ingenious, they should, nevertheless, be considered as factors on the trial of the merits. A cause of action does exist and the exception should have been overruled.

Our Civil Code is the legal monarch over all things it surveys. It is both subject and object, creator and created, preserver and preserved. In fact, it is legally Louisiana's Ark of the Covenant. However, for the better preservation of the law, we must put an end to the idolatry of precedent worship of decisions that are not in accord with the views and aspirations of the present and refuse to adopt the legal abstractions of other jurisdictions. We should more closely safeguard our own codal articles as to the devolution of property, in order to prevent our being drawn into the vortex of federal governmental regulations. There should be less focusing on the words of judges, and we should become imbued with the spirit of "what is right is right".

There is no need of the federal government in its contractual regulations with its

bondholders to encroach on the law of Louisiana, when a reasonable construction can be given to both federal regulations and our State laws.

We are aware that the 1949 Code of Federal Regulations—Title 31, Money and Finance, § 315:45 prescribes:

> "If either coowner dies without having presented and surrendered the bond for payment or authorized reissue, the surviving coowner will be recognized as the sole and absolute owner of the bond and payment or reissue, as though the bond were registered in his name alone, will be made only to such survivor. If the survivor requests reissue, he must present proof of the death of the other coowner. If a coowner dies after he has presented and surrendered the bond for payment, payment of the bond or check if one has been issued will be made to his estate.
> * * *"

We have on several occasions held that the bonds will be paid in accordance with the stated contract, beneficiary or co-owner, but the payee or beneficiary is a debtor of the former owner or his heir. Slater v. Culpepper, 222 La. 962, 64 So.2d 234; Succession of Geagan, supra; and Succession of Land and Winsberg v. Winsberg, supra.

In Winsberg v. Winsberg, 220 La. 398, 56 So.2d 730, legal lanes of navigation were set out on which we should chart our course with relation to the exception of no cause of action. That decision with particularity described first the reason for the governmental regulation and, secondly, considered, in the light of consequences, the regulation applied to the Tenth Amendment of the Constitution of the United States. There the Court aptly stated, 220 La. at page 404, 56 So.2d at page 732:

> "* * * Federal Government is neither concerned with nor interested in the application and enforcement of State laws respecting succession or inheritance of property. Indeed, it seems manifest that the regulations of the Treasury Department for the payment of savings bonds (relied on by defendant in this case), were designed solely to facilitate the Government, by providing a simple method for the liquidation of these obligations, so that it would not be subjected to the inconvenience and delays attendant to the settlement of conflicting or disputed claims. There was not, in our opinion, any intention to interfere with the enforcement of the laws of descent and distribution of the various States. Therefore, forasmuch as the payment on death clause contained in such bonds must be considered as a valid appendage to our laws respecting the forms for dispositions mortis causa, it appears logical to apply all provisions pertaining to testamentary dispositions, except those dealing with forms, in determining rights and liabilities under such a devise."

The facts of the Winsberg case supra and the instant case are not identical, but the principle of law involved is the same.

Further, in the Winsberg case, 220 La. at page 406, 56 So.2d at page 732, it is stated:

"So we say in this case that the defendant cannot be accorded greater rights, merely because the donation is in the form of a Federal contract, than he would have had if it had been by last will and testament as prescribed by our law. And, while Louisiana may not require that the bonds be paid to anyone other than the named beneficiary, it undoubtedly has the power, which was reserved to it by the Tenth Amendment of the Federal Constitution, to decree that the beneficiary or payee is indebted to the estate of the former owner, or his heir, in an amount equal to the value of the gift."

Here in seeking authority for a construction of a Federal regulation or a reasonable implication therefrom, loose construction could come to mean the right of the Federal Government to do in its regulations whatever was not forbidden by the United States Constitution, provided the act was deemed to be for the general good. If such a theory of constitutional construction were to prevail and the original notion of the Constitution as a grant of power, under which everything not granted was withheld —were to be replaced by the rule that everything not withheld was granted, the Federal Government would be admittedly supreme and the reserved rights of the States would speedily become only a formula of words.

The function of the judicial branch of government is to be watchful against any encroachment on the fundamental rights. Our motto is "Obsta principiis"—"resist the first beginning."

The judgment of the district court sustaining the exception of no cause of action is reversed, annulled and set aside, and the case is remanded to the district court for trial on the merits, in accordance with the law. The costs of this appeal to be borne by appellee-exceptors.

HAMITER, J., concurs in the decree.