### ROMAN v. SMITH.

5-1373                                    314 S. W. 2d 225

Substituted opinion on rehearing delivered July 1, 1958.

Original opinion delivered March 3, 1958.

*George E. Pike,* for appellant.

*Reinberger & Eilbott,* for appellee.

REX W. PERKINS, Special Justice. The appellants' decedent, John A. Smith, and appellee Ada Davidson Smith were husband and wife from February 10, 1946 to December 10, 1954. Prior to the time of such relationship the decedent purchased eighteen (18) United States Government Savings Bonds, Series E, payable to Sgt. John A. Smith P. O. D. (payable on death) Miss Ada Davidson.

On September 24, 1954 the decedent filed a divorce proceeding against the wife in the Arkansas County Chancery Court, Southern Division, being Case No. 5946. The decree of divorce and an approval of a property settlement agreement was rendered on the wife's cross-complaint on December 10, 1954; and in that decree the Court retained jurisdiction of the cause for such further orders as might be necessary to enforce the rights of the parties.

The property settlement agreement approved by the Court, among other things, provided: "First Party (John A. Smith) agrees to pay to Second Party (Ada Davidson Smith) Forty Thousand Dollars ($40,000.00) in cash and deliver to her United States Savings Bonds in the face amount of $1,800.00, the said bonds being identified as those which are now kept in a lock box in a bank in the City of DeWitt."

The settlement agreement was fully performed as agreed, except $1,780.00 in cash was paid to the wife in lieu of delivering the $1,800.00 in United States Government Bonds. The following notation appeared on the original of the property settlement agreement: "Cash $1,780.00 substituted for Bonds, and draft for $40,000.00 received. (s) R. A. Eilbott, Jr. Attorney for Ada Smith."

Subsequently on October 30, 1955 John A. Smith died. Mildred S. Roman and George Smith, the appellants, were appointed joint administrators of his estate by the Arkansas County Probate Court, and as such they found the United States Series E. Savings Bonds mentioned in the property settlement agreement in his safety deposit box. The names of the payees had not been changed from the time of their original issue.

On May 9, 1956 the administrators filed an intervention in the case of *John A. Smith* v. *Ada Davidson Smith*, No. 5946, in the Chancery Court of Arkansas County, Southern District, alleged in substance the facts set out hereinabove, and prayed: For an order of this Court directing the said defendant to endorse the bonds, in order to complete the settlement; and in the event of her failure to do so, that appropriate action be taken to require her to endorse the said bonds; and for such further relief as the petitioners may be entitled to in a court of equity. On May 19, 1956 the wife filed a demurrer to the intervention, and an answer thereto, and a cross complaint claiming said bonds and praying for an order for delivery. Also, on May 19, 1956 the wife petitioned the Arkansas County Probate Court, Southern Division, in the Matter of the Estate of John A. Smith, Jr., deceased, for an order directing the administrators to deliver the bonds in question to her. Both the Chancery case and the Probate case were consolidated for trial purposes by agreement. The Trial Court reserved its ruling on the demurrer in the Chancery case until all the evidence was in, at which time an order sustaining the demurrer was entered. Both parties to the Chancery proceeding have appealed.

The appellants first contend that the Arkansas County Chancery Court had jurisdiction to enforce the property settlement agreement and to determine the rights to the proceeds of the United States Savings Bonds. In the original proceedings in the case of *John A. Smith* v. *Ada Davidson Smith,* Arkansas County Chancery Court, Case No. 5946, the Court entered a divorce decree in which a property settlement agreement was approved, and jurisdiction was reserved for the specific purpose of rendering such further orders as may be necessary to enforce the rights of the parties. After the death of appellants' decedent John A. Smith, the appellants, as administrators of the estate of John A. Smith, deceased, filed an intervention in the Arkansas County Chancery Court, Southern District, seeking to enforce their rights as successors to the interest of John A. Smith, deceased, in the United States Savings Bonds under the property settlemeny agreement. Appellee resists the intervention on the ground that the Court had no jurisdiction, which position was sustained by the Trial Court. The appellants, Mildred S. Roman and George Smith, as administrators of the estate of John A. Smith, deceased, were privy in law and estate to John A. Smith, deceased; and, therefore, they had a right to intervene in the Chancery suit to claim the rights of John A. Smith, deceased, under the property settlement agreement over which the Trial Court had specifically retained jurisdiction for the purpose of rendering such further orders as may be necessary to enforce the rights of the parties. *Collum* v. *Hervey,* 176 Ark. 714, 3 S. W. 2d 993, 15 R. C. L. 1015.

Appellants next contend that as representatives of the estate of John A. Smith, deceased, they are entitled to the proceeds from the bonds in suit. In opposition, appellee contends that under the United States Treasury Regulations the form of registration of these bonds is conclusive of ownership, and that this Court cannot enter an order affecting either the ownership of the bonds or the proceeds received therefrom contrary to the registration. In this respect she contends that the case is

controlled by the following provisions of the Treasury Regulation:

Sec. 315.4 of said regulations provides for the registration of savings bonds in the names of two persons in the alternative as co-owners and no other form of registration establishing co-ownership is authorized. Registration may also be made in the name of one person payable on death to another. Sec. 315.11 makes savings bonds nontransferable and payable only to the owners named thereon except under circumstances not pertinent to this litigation. Sec. 315.45 specifies the manner in which bonds registered in the names of two persons as co-owners shall be paid. It provides (1) payment will be made to either co-owner upon his individual request during the lifetime of both; (2) any bond will be reissued to any designated person during the lifetime of both co-owners upon the request of both where the co-owners are divorced or legally separated or their marriage annulled after the issuance of the bond; and (3) if either co-owner dies without having presented and surrendered the bond for payment or authorized reissue, the surviving co-owner will be recognized as the sole and absolute owner of the bond, and payment or reissue will be made only to such survivor as though the bond were registered in his name alone. Sec. 315.46 specifies the manner in which bonds registered in the name of one person payable on death to another shall be paid. It provides (1) payment will be made to the registered owner during his lifetime upon his individual request as though no beneficiary had been named in the registration; (2) any bond will be reissued to name the beneficiary designated on the bond as co-owner, to the registered owner, to eliminate the beneficiary, or to substitute another named beneficiary, or to name another person as co-owner, upon the consent of the designated beneficiary, and to name the beneficiary as the owner upon proof of the death of the registered owner; and, (3) if the registered owner dies without having presented the bond for payment or authorized reissue and is survived by the beneficiary, upon proof of such death and survivorship, the beneficiary will be recognized

as the sole and absolute owner of the bond, and payment or reissue will be made only to such survivor, as though the bond were registered in his name alone. Sec. 315.13 provides for the recognition of conflicting claims as to the ownership or interest in such bonds as between co-owners when established by a valid judicial proceeding providing such proceeding does not give effect to an attempted voluntary transfer *inter vivos* of the bond, or would defeat or impair the right of survivor, conferred by these regulations upon a surviving co-owner or beneficiary. This section further provides that a divorce decree ratifying or confirming a property settlement agreement between husband and wife, or otherwise settling their respective interests in savings bonds, will be recognized and will not be regarded as a proceeding giving effect to an attempted voluntary transfer *inter vivos*.

These are the sections of the regulations under which the bonds in suit were issued and are part of the terms of the contract between the United States and John A. Smith in his lifetime, and which appellee contends abolutely bar the appellants from a recovery in this case. In effect she says that under these regulations and the contract the appellants' decedent could have requested payment to himself as the registered owner and surrendered the bonds for that purpose during his lifetime; but that he made no attempt to pursue this remedy although he lived for more than eleven months following the divorce decree and property settlement agreement. The result was that the appellants' decedent, the registered owner of the bonds in suit, died without having presented and surrendered them for payment or reissue. This, the appellee contends, made her the absolute owner of said bonds as provided by the regulations under which they were issued. She disposes of the property settlement agreement with the assertion that it is an attempted voluntary transfer *inter vivos* of the bonds involved which would defeat her right of survivorship, and that her rights to the bonds, regardless of the provisions of the property settlement agreement,

or the substitution of the cash for bonds, depended entirely upon her surviving the appellants' decedent.

In support of this proposition she refers to *Myers* v. *Hardin, Adm.,* 208 Ark. 505, 186 S. W. 2d 925; *Jones* v. *Hardin, Adm.,* 211 Ark. 273, 200 S. W. 2d 95; and *Taylor* v. *Schlotfelt,* 218 Ark. 589, 287 S. W. 2d 890. In the *Myers* case the Court held that the United States Bonds issued to a decedent and payable after her decease to a named beneficiary, became on her decease the absolute property of the named beneficiary without regard to the provisions of the will of the deceased which made no specific reference to the bonds. The *Jones* case is a related case of *Myers* v. *Hardin, supra.* The *Taylor* case held that a guardian cannot cash United States Bonds issued to his ward and a co-owner during the life of his insane ward unless the proceeds are required for the maintenance of his ward; and the death of the ward completes the gift of the bonds to the co-owner. These cases fail to provide a solution to the problem here because the beneficiaries had made no attempt to dispose of their interest in the bonds for a valuable consideration before the death of the registered owner, and the effect of such a disposition of interest on the ultimate ownership of the bonds was not discussed or decided by this Court.

Many cases from other jurisdictions have been examined, and no case has been found where the court permitted a surviving owner of United States Savings Bonds to repudiate a property settlement agreement or a contract of any nature under which a surrender of interest in bonds was made to the other owner for a valuable consideration, and upon the surviving owner's claim to the absolute ownership thereof for the sole reason that such deceased owner had not, during his lifetime, cashed the bonds or taken steps to have them reissued in his name alone. In *Tharp* v. *Besozzi,* Ind. App., 144 N. E. 2d 430, Thelma C. Tharp and one Arthur Morrison were one time husband and wife, and during the period of such relationship they acquired United States Savings Bonds, Series E, which were held in their joint

names with right of survivorship. The wife filed suit for divorce against the husband, and while said suit was pending the parties entered into a property settlement under the terms of which the husband retained the United States Savings Bonds. The property settlement agreement was fully performed, and on October 4, 1946 a divorce decree was rendered which did not incorporate or ratify the agreement. The husband died on November 15, 1953, without having cashed or surrendered the bonds and having them reissued in his name alone. The wife claimed the proceeds from the bonds and relied on the Treasury Regulations cited hereinabove. The Court held that although the bonds represented a contract between the United States of America and the registered owner of the bonds, the United States could not be compelled to pay any person other than the registered owner; nevertheless the wife should surrender the bonds in controversy for cash in compliance with the treasury regulations and pay the proceeds therefrom over to the administrator of the deceased husband's estate. See *Lemon* v. *Foulston,* 169 Kan. 372, 219 P. 2d 388.

The Supreme Court of Louisiana has held that the Louisiana Statutes of descent and distribution apply to co-owned United States Savings Bond held by a decedent, and even though the federal law controls as to the payee of such bonds, it does not prevent the Louisiana law from determining how the proceeds therefrom shall be distributed. *Succession of Gladney,* 223 La. 949, 67 So. 2d 547. In *Ibey* v. *Ibey,* 93 N. H. 434, 43 A. 2d 157, it was held that where a husband purchased United States Savings Bonds and made them P. O. D. to others to defraud his wife of her downer interest, a constructive trust would be imposed upon the proceeds therefrom held by such payees. In *Chase* v. *Leiter,* 96 Cal. App. 2d 439, 215 P. 2d 756, it was held that the Treasury Regulations could not be used as an instrument of fraud, so a constructive trust was declared in the proceeds of United States Savings Bonds as a means of compelling performance of an agreement to make a joint will. *Accord: Anderson* v. *Benson* (D. C. Neb.), 117 F.

Supp. 765; *Union National Bank* v. *Jessell,* 353 Mo. 467, 215 S. W. 2d 474.

In this case, appellee received all that she was to get under the property settlement agreement which was at least approved in part by the Chancery Court, and now she seeks to get a part of that property which was set aside to the appellants' decedent solely because he neglected to cash the bonds or have them reissued in his name alone during his lifetime pursuant to the Treasury Regulations. Such a construction of the Treasury Regulations is not supported by the authorities, and certainly is contrary to the principles of equity and fair dealing.

Insofar as the United States of America is concerned the bonds in suit are the absolute property of the appellee, and this Court cannot compel the Government to pay them to anyone else or to recognize the interest of anyone else in them except as expressly provided by the Treasury Regulations under which they were issued. See notes 140 A. L. R. 1435, 161 A. L. R. 170, 188 A. L. R. 245, and 173 A. L. R. 550. But this is not an action against the United States for the payment of the bonds in suit, nor is it a proceeding to compel the United States to recognize the appellants' interest in them. This suit merely seeks to compel the appellee to surrender the bonds in suit for cash in compliance with the Treasury Regulations. The United States will satisfy its obligations under the bonds by paying the proceeds in accordance with the terms of its contract to the named beneficiary — the appellee in this case, and there is nothing in the law or regulations which prevents this Court from declaring a constructive trust in the proceeds of the bonds in order to prevent flagrant and unfair dealings or even fraud. See *Anderson* v. *Benson, supra; Chase* v. *Leiter, supra; Ivey* v. *Ibey, supra; Tharp* v. *Besozzi, supra; Union National Bank* v. *Jessell, supra.* Since the federal regulations require that the bonds be cashed "voluntarily", the court cannot compel the appellee to cash the bonds. It should, however, enter a money judgment against the appellee

for the value of the bonds, which will be surrendered to her upon satisfaction of the judgment.

The judgment and decree are reversed and the causes remanded to the lower courts for further proceedings in accordance with this opinion.

HARRIS, C. J., disqualified and not participating; HOLT, McFADDIN and ROBINSON, JJ., dissent.

GEORGE ROSE SMITH, J., concurring. I join in the opinion of Special Justice Perkins, but there is another matter that seems to me to confirm the conclusion reached. Under § 315-46 of the Treasury Regulation these bonds, during the lifetime of John A. Smith, could have been *cashed* by him alone, but they could not have been *reissued* in his name alone without the consent of his former wife. At the time of the divorce decree the bonds had matured and were bearing 3 per cent interest. Had Smith cashed the bonds and reinvested the proceeds in Series E bonds he would not for several years have received interest at the 3 per cent rate, as bonds of this series bear a lesser rate of interest when first purchased. Hence it was to Smith's advantage to continue to receive the higher rate of return by not cashing the bonds. Two disinterested witnesses testified that Smith actually stated that this was his reason for not cashing these bonds. Doubtless that testimony was inadmissible, but even without that evidence he *might* have had that reason for leaving the bonds undisturbed, and, in view of his apparent care in money matters, I am inclined to think that *was* the reason for his inaction.

SAM ROBINSON, Associate Justice, dissenting. When the so-called intervention was filed in May, 1956, asking that the appellant be required to indorse the bonds in order to complete the settlement in the divorce case, the court had lost jurisdiction. When Smith paid the $40,000 plus $1,780, there was nothing left undone; the judgment had been satisfied.

Now as to the merits: Smith did not need the indorsement of his former wife to enable him to cash the bonds. If he had wanted to deprive her of the proceeds of the bonds in the event of his death, there was nothing to keep

him from cashing the bonds in his lifetime. He had possession of the bonds for almost a year after the divorce was granted, with full power and authority to cash them at any time. All the bonds matured before Smith's death.

The decision of the majority is based entirely on the assumption that Smith "neglected to cash the bonds or have them reissued in his name alone during his lifetime." In my opinion there is not a scintilla of evidence in the record, direct or circumstantial, to support such an assumption. On the contrary, the evidence is that the bonds were not cashed for the simple reason that Smith did not want to cash them. In the event of his death he wanted his divorced wife to get the comparatively small amount of money represented by the bonds. The bonds had been purchased by Smith before he and appellee were married. The bonds were made payable to John A. Smith, but on his death they are payable to "Miss Ada Davidson," who later married John A. Smith and is the appellee.

The Smiths were married in 1946 and lived together as man and wife until 1954. No children were born of this union, and John A. Smith is not survived by any children; neither is he survived by father or mother or brothers or sisters. At the time of his death he was worth more than $200,000. From the proven facts, I think there is a reasonable inference that Smith did not cash the bonds because he wanted his former wife to have that small amount additional in the event of his death. One thing for certain, there is not any evidence that he failed to cash the bonds through negligence. Ordinarily a person who accumulates more than $200,000 is not very negligent about money matters.

I am authorized to say that Mr. Justice HOLT and Mr. Justice McFADDIN join in this dissent.