197 So.2d 738 (1967)
Succession of Louis Francis GUERRE.
No. 2646.
Court of Appeal of Louisiana, Fourth Circuit.
April 3, 1967.
Rehearing Denied May 1, 1967.
Writ Refused June 20, 1967.
*739 Deutsch, Kerrigan & Stiles, Marian Mayer Berkett, New Orleans, for Lansing L. Mitchell, testamentary executor, appellee.
Steeg & Shushan, Louis G. Shushan and Andrew M. Weir, New Orleans, for Mrs. Mabel Guerre Binnings, Mrs. Mildred Guerre Fabacher, and Mrs. Hazel Guerre Gibson, appellees.
Reuter, Reuter & Schott, Arthur C. Reuter, New Orleans, for Mrs. Nell Heaphy Broders, appellant.
deVerges & deVerges, Ed J. deVerges, New Orleans, for Mrs. Marguerite Heaphy, James D. Heaphy, Russell L. Heaphy, and Alden J. Heaphy, appellants.
Pugh, Buatt, Landry & Pugh, Lawrence G. Pugh, Jr., Crowley, for Mrs. Noemie Freret LeBlanc and Mrs. Marguerite Freret Hetzel, appellants.
Before McBRIDE, JANVIER, and BARNETTE, JJ.
BARNETTE, Judge.
This is a proceeding initiated on rules to show cause, directed to the testamentary executor of the decedent's succession, seeking a judgment ordering and directing him to strike certain United States Savings Bonds from the detailed descriptive list of property belonging to the succession. The *740 rules further seek a judgment ordering the executor to deliver the bonds to the respective surviving alternate payees as unconditional owners thereof, free of all liens, claims or charges, on the authority of Free v. Bland, 369 U.S. 663, 82 S.Ct. 1089, 8 L.Ed.2d 180 (1962).
The trial court dismissed the rules on authority of Yiatchos v. Yiatchos, 376 U.S. 306, 84 S.Ct. 742, 11 L.Ed.2d 724 (1964), holding the principle of constructive fraud, as pronounced in that case, modified the rule of Free v. Bland, and that the forced heirs could not be deprived of their legitime by the device employed. From that judgment the movers have appealed.
The decedent Louis Francis Guerre died on August 21, 1966, leaving three children; namely, Mrs. Mabel Guerre Binnings, Mrs. Mildred Guerre Fabacher and Mrs. Hazel Guerre Gibson, all forced heirs. In his will he left to these named daughters "the legitime allowed them by law."
The remainder of his property he left to Mrs. Noemie Freret LeBlanc, Sr., Mrs. Marguerite Freret Hetzel and Mrs. Nell Heaphy Broders.
During the years 1961 and 1962, decedent acquired a total of 50 United States Savings Bonds of $1,000 denomination each, all of which were payable to Louis F. Guerre or the respective alternate coowners as follows:

Mrs. Nell Heaphy Broders 14 Bonds
Mrs. Noemie Freret LeBlanc 10 Bonds
Mrs. Marguerite Freret Hetzel 10 Bonds
Mrs. Marguerite Heaphy 1 Bond
James D. Heaphy 3 Bonds
Alden J. Heaphy 5 Bonds
Russell L. Heaphy 5 Bonds
Gustav J. Freret 2 Bonds

All of the named co-owners except Gustav J. Freret are movers in the rules filed and are appellants before this court.
The bonds are appraised at $42,779.60. They are in possession of Lansing L. Mitchell, testamentary executor, and he has listed them as property belonging to the succession. The balance of the estate consists of $8,941.35 in bank deposits and a small amount of personal effects, making the total value of decedent's estate $52,507.95. Obviously, therefore, the exclusion of the $42,779.60, represented by the bonds from the assets of the succession, would greatly reduce the legitime due the forced heirs.
The three forced heirs were made respondents to the rules, along with Lansing L. Mitchell, testamentary executor. At the trial of the rules below, the only evidence submitted was a copy of United States Treasury Department Regulations governing United States Savings Bonds. There is no dispute of fact, and the issue presented below and on this appeal is entirely one of law. All parties in interest presented trial briefs and have briefed and argued the issues of law on this appeal.
The Supreme Court of Louisiana has clearly recognized the authority of Congress in the issuance of United States Savings Bonds to prescribe methods by which the ownership of such bonds can be transmitted or disposed of, in addition to the methods prescribed by the laws of Louisiana. The devices used are the co-owner bonds payable to A or B and the beneficiary form bonds payable to A or upon his death to B. While neither of these methods of transmission or disposition meets the requirements, as to form, of the laws of this State for donations inter vivos or mortis causa, they have been recognized as additional methods for transmitting or disposing of property superimposed on our law by federal law. Winsberg v. Winsberg, 220 La. 398, 56 So.2d 730 (1952); Succession of Weis, 162 So.2d 791 (La.App. 4th Cir. 1964).
While recognizing the supremacy of federal law in this respect, our Supreme Court said in Winsberg:
"But though these contracts are entitled to recognition as another way to dispose of property in prospect of death, *741 it does not follow that they may be employed so as to nullify the laws applicable to the devolution of property or to confer upon the donees greater rights than they would have had if the devise had been in the form of a last will and testament. It is apt to observe that the Federal Government is neither concerned with nor interested in the application and enforcement of State laws respecting succession of inheritance of property. Indeed, it seems manifest that the regulations of the Treasury Department for the payment of savings bonds (relied on by defendant in this case), were designed solely to facilitate the Government, by providing a simple method for the liquidation of these obligations, so that it would not be subjected to the inconvenience and delays attendant to the settlement of conflicting or disputed claims. There was not, in our opinion, any intention to interfere with the enforcement of the laws of descent and distribution of the various States. * * *
* * * * * *
"So we say in this case that the defendant cannot be accorded greater rights, merely because the donation is in the form of a Federal contract, than he would have had if it had been by last will and testament as prescribed by our law. And, while Louisiana may not require that the bonds be paid to anyone other than the named beneficiary, it undoubtedly has the power, which was reserved to it by the Tenth Amendment of the Federal Constitution, to decree that the beneficiary or payee is indebted to the estate of the former owner, or his heir, in an amount equal to the value of the gift." 56 So.2d at 731-732.
In Succession of Gladney, 223 La. 949, 67 So.2d 547 (1953), our Supreme Court quoted at length from Winsberg and reaffirmed its rationale there expressed. The Court also pointed out very aptly:
"There is no need of the federal government in its contractual regulations with its bondholders to encroach on the law of Louisiana, when a reasonable construction can be given to both federal regulations and our State laws." (Emphasis added.) 67 So.2d at 549.
We think the present case is one in which effect can be given both to the federal regulations and the laws of Louisiana relative to the rights of forced heirs without the recognition or enforcement of either encroaching upon the other. In our opinion, Free v. Bland, upon which appellants principally rely, does not restrict us in the application of our State laws, provided we give primacy to the federal regulations in those respects only where they are in conflict. The Court in Free was careful to point out:
"* * * While affording purchasers of bonds the opportunity to choose a survivorship provision which must be recognized by the States, the regulations neither insulate the purchasers from all claims regarding ownership nor immunize the bonds from execution in satisfaction of a judgment. * * *" 82 S. Ct. at 1094.
In Free v. Bland, the husband bought bonds with community funds issued to "Mr. or Mrs." Free. This was a Texas case where community property laws similar to those in Louisiana were involved. Under United States Treasury Regulations, 31 C. F.R. § 315.62, the co-owner will be recognized as the sole and absolute owner upon the death of the other co-owner. Mrs. Free died, and Mr. Free claimed the bonds under the federal regulations as absolute owner. The trial court recognized his full ownership "but awarded reimbursement to the respondent [Mrs. Free's son by another marriage] by virtue of the state community property laws, making the bonds security for payment." (Emphasis added.) The Court of Civil Appeals sustained the judgment recognizing full ownership of the bonds in Mr. Free, but reversed the award of reimbursement. When this matter then came to the Texas Supreme Court, it reversed *742 the Court of Civil Appeals and reinstated the judgment of the District Court. The Supreme Court of the United States granted writs.
The United States Supreme Court said:
"* * * The relative importance to the State of its own law is not material when there is a conflict with a valid federal law, for the Framers of our Constitution provided that the federal law must prevail. Article VI, Clause 2. This principle was made clear by Chief Justice Marshall when he stated for the Court that any state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield. Gibbons v. Ogden, 9 Wheat. 1, 210-211, 6 L.Ed. 23. See Franklin National Bank of Franklin Square v. People of State of New York, 347 U.S. 373, 74 S.Ct. 550, 98 L. Ed. 767; Wissner v. Wissner, 338 U.S. 655, 70 S.Ct. 398, 94 L.Ed. 424; Sola Electric Co. v. Jefferson Electric Co., 317 U.S. 173, 63 S.Ct. 172, 87 L.Ed. 165. Thus our inquiry is directed toward whether there is a valid federal law, and if so, whether there is a conflict with state law." 82 S.Ct. at 1092.
The Court then held there was valid federal law and that the state court which awarded the co-owner title but "required him to account" (emphasis added) for half the value had in effect made the award of title meaningless. It then said:
"* * * Making the bonds security for the payment confirms the accuracy of this view. If the State can frustrate the parties' attempt to use the bonds' survivorship provision through the simple expedient of requiring the survivor to reimburse the estate of the deceased coowner as a matter of law, the State has interfered directly with a legitimate exercise of the power of the Federal Government to borrow money." 82 S.Ct. at 1093.
Apparently the Court did not mean to imply that it was the making the bonds security for the payment but the ordering of an accounting for half their value that was an interference with federal intent. The Court further said:
"We hold, therefore, that the state law which prohibits a married couple from taking advantage of the survivorship provisions of United States Savings Bonds merely because the purchase price is paid out of community property must fall under the Supremacy Clause." 82 S.Ct. at 1094.
The Court did, however, foresee the possibility of an unintended federal sanction of the use of this device for transmission of property as a means to circumvent state laws enacted for the protection of property rights and said:
"* * * The regulations are not intended to be a shield for fraud and relief would be available in a case where the circumstances manifest fraud or a breach of trust tantamount thereto on the part of a husband while acting in his capacity as manager of the general community property. However, the doctrine of fraud applicable under federal law in such a case must be determined on another day, for this issue is not presently here. * * *" 82 S.Ct. at 1094.
Then came the case of Yiatchos v. Yiatchos in which the Supreme Court, referring to the above reservation in Free v. Bland, said: "This is one of those cases." We think its holding in that case clearly modifies the effect of Free v. Bland.
In Yiatchos, the decedent purchased bonds with community funds registered in his name payable on death to his brother. The brother brought suit in the Washington State Court to have his ownership of the bonds recognized under federal regulations.
The Supreme Court of Washington held the husband had done an act in fraud of the rights of his wife"a void endeavor to divest the wife of any interest in her own property." It held that he breached *743 his fiduciary duty to the wife in the management of community property, holding that the wife had a vested half interest in the bond proceeds. The Court held the brother was entitled to the bonds unless there was fraud or breach of trust. In determining if fraud was committed, the Court said it would look to state law to determine rights. It stated:
"* * * But in applying the federal standard we shall be guided by state law insofar as the property interests of the widow created by state law are concerned. It would seem obvious that the bonds may not be used as a device to deprive the widow of property rights which she enjoys under Washington law and which would not be transferable by her husband but for the survivorship provisions of the federal bonds." 84 S.Ct. at 745.
The case was remanded to give the wife an opportunity to establish certain facts that might show constructive fraud and for an answer to certain questions about her community ownership rights saying:
"* * * If under Washington law, the widow, after her husband's death, has no interest in specific assets owned by the community and her half of the community estate may be satisfied from property or money other than the bonds, petitioner is entitled to all of the bonds for then there is no fraud or breach of trust in derogation of the widow's property rights under state law. * * *" 84 S.Ct. at 746.
The Court held that a requirement that the bonds be disposed of by will or by state intestacy provisions is nothing more than an attempt by the state to prohibit the utilization of savings bonds to transmit property at death which is forbidden by Free v. Bland, but said:
"* * * It would not contravene federal law as expressed in the applicable regulations to require the bonds to bear the same share of the debts that they would have borne if they had been passed to petitioner as a specific legacy under the will rather than by the survivorship provisions of the bonds." 84 S.Ct. at 747.
We think the application of this rationale is equally pertinent to the issue presented in this case relative to the rights of forced heirs. We conclude that its application here will enable us to give effect both to the federally designed method of transmitting the ownership of the bonds and the laws of Louisiana protecting the rights of forced heirs against excessive donations.
Appellants have made a pertinent distinction between the vested right which a wife has in Louisiana (as in Yiatchos) in community property and the right of a forced heir. It is argued that the wife has a vested right of ownership in one-half of the community property, whereas a forced heir has no vested right until the death of the parent from whom his inheritance flows. We concede that one cannot be defrauded of that in which he has no vested interest, but this is a distinction without a difference in the application of the principle pronounced in Yiatchos.
We read that decision interpreting Free v. Bland to mean that co-ownership or survivor bonds are not intended under Federal Treasury Regulations to be used as a device to circumvent the established laws of the states enacted for the protection of the rights of its citizens and thus deprive them of property rights guaranteed by state laws. We think the Supreme Court did not intend to restrict the application of the principle of Yiatchos only to situations meeting the rigid test of fraud in its literal sense.
There is no right more sacred in our laws than the right of a forced heir to inherit no less than a fixed minimum, which we call the legitime. This right is so deeply ingrained in our civil law that it has been declared in the Constitution of Louisiana in Article IV, Section 16, thus protecting it from the risk of legislative infringement. We must agree that a child has no vested *744 right in his parent's property during the lifetime of the parent, but he has a constitutionally vested right of inheritance to no less than a fixed portion of his parent's property. This right his parent cannot divest him of by any device or means known to our law except for the causes of disinherison enumerated in LSA-C.C. art. 1621 and then only "by name and expressly." LSA-C.C. art. 1619. Therefore, we construe any attempt by a parent to breach this right by the means of converting his estate into United States Savings Bonds, payable to himself or a stranger or to a stranger upon his death, as a circumvention of the laws of Louisiana enacted for the protection of forced heirs from unwarranted disinherison. This is a wrong no less grievous than a breach of fiduciary trust in management of community property to the prejudice of his wife's vested property right. An act can be a wrong without meeting the rigid requirements of fraud.
A superimposition upon the laws of Louisiana of such a device as an additional method of disinherison of forced heirs could not conceivably serve any federal interest, such as we have conceded in respect to the superimposition upon our laws of that device as an additional method of transmitting or disposing of property. This point is also discussed by us in Succession of Videau, La.App., 197 So.2d 655, this day decided.
Appellants have argued the analogy of the bonds in question to a life insurance policy, citing Sizeler v. Sizeler, 170 La. 128, 127 So. 388 (1930), through which means a person might effectively deprive a forced heir of his legitime. It is suggested that, upon the same rationale, the courts of Louisiana might recognize the device of coowner or beneficiary bond purchase to accomplish the same end.[1] While the analogy may appear relevant, except for dictum in Succession of Tanner, 24 So.2d 642 (La. App. 1st Cir.1946),[2] our courts have not extended the analogy of life insurance contracts to other devices, and we know of no reason why it should be done in this case.
We therefore hold that the appellants named, as co-owners or alternate payees of the bonds respectively, are the owners of the bonds with the right of immediate possession as intended by 31 C.F.R. § 315.62. Thus, we give recognition and effect to the supremacy of the federal laws. The declared policy and expressed intent that this be a means of transmission stripped of formality, delay, and expense incident to probate proceedingswill then have been honored.
We can make no distinction between the situation before us and one where the decedent elects to withdraw an equal amount of cash and make a donation to the named co-owner, or where he purchases and registers bonds in the name of the payee individually. Nor can we distinguish in principle the co-owner "or" bond from the beneficiary "payable on death" bond, in relationship to the point at issue
As stated above, the courts of this State have recognized the method employed by decedent as a means of transmitting property (money) as additional to the methods provided by our laws for donations inter vivos and mortis causa. But our courts have consistently held that donations thus made are equally subject to the restrictions imposed by the laws of Louisiana, except as to form. Succession of Mulqueeny, 248 La. 659, 181 So.2d 384 (1965); Slater v. Culpepper, 222 La. 962, 64 So.2d 234, 37 *745 A.L.R.2d 1216 (1953); Winsberg v. Winsberg, supra; Succession of Geagan, 212 La. 574, 33 So.2d 118 (1948); Succession of Land, 212 La. 103, 31 So.2d 609 (1947); Succession of Raborn, 210 La. 1033, 29 So.2d 53 (1946); Succession of Mulqueeny, 172 So.2d 326 (La.App. 4th Cir. 1965); Succession of Mulqueeny, 156 So.2d 317 (La.App. 4th Cir. 1963).
We therefore hold that the forced heirs have a right to proceed according to law in an action for reduction of excessive donation against the surviving co-owner registrants of the bonds in question in the same manner as if an equal amount of money had been given to them through the medium of donation inter vivos. But they have no right to interfere with the owners of the bonds taking immediate possession thereof and exercising all the rights of absolute ownership as intended by the Federal Treasury Regulations. Thus, effect will be given to the laws of Louisiana while at the same time recognizing the sole and absolute ownership of the surviving coowners as required by 31 C.F.R. § 315.62.
Whatever doubt might seem to be cast upon the validity of this conclusion by a literal interpretation of Free v. Bland, as discussed in several excellent law review articles,[3] we think has been removed by the later pronouncements in Yiatchos v. Yiatchos, particularly wherein the Supreme Court said:
"* * * It would not contravene federal law as expressed in the applicable regulations to require the bonds to bear the same share of the debts [or accountability for excessive donation] that they would have borne if they had been passed to petitioner as a specific legacy under the will [or by donation inter vivos] rather than by the survivorship [or co-owner] provisions of the bonds." (Words added for analogy) 84 S.Ct. at 747.
We think the word "debts" in the foregoing quotation cannot be literally construed, but must be read in a broader sense as obligations. We cannot conceive of any debt which the bonds would be called upon to share in bearing, except perhaps a proportionment of estate taxes. The bonds are not chargeable with the administrative or other costs of the succession, nor can they be called upon to share the debt of a creditor of the deceased or his succession, regardless of the solvency of the estate. They have passed out of decedent's estate and form no part of his succession. What conceivable burden (or "debt") could they then be required to share in bearing, except the obligation emanating from an action for reduction of excessive donations, as in this case, or for collation in an appropriate case? Any construction of the foregoing statement, other than that which we have given, will render it meaningless.
We find no fault with the authorities cited by appellants relative to the requirement that fraud must be specifically pleaded, but the argument is irrelevant. Nor do we find merit in the argument that the forced heirs have filed no pleadings. They were made parties respondent by appellants in their rules below. The only issues raised by the rules concern the ownership of the bonds, the refusal of the executor to exclude them from the descriptive list of assets belonging to the succession, and the executor's failure to deliver them to the claimants. Our decision on that issue may give rise to a suit for a reduction of excessive donation, but that issue is not presently before us.
The judgment appealed from is reversed. Judgment is now rendered in favor of movers in rules against Lansing L. Mitchell, testamentary executor, ordering him to amend the descriptive list of assets belonging to the succession of Louis Francis Guerre by deleting and excluding therefrom *746 the United States Savings Bonds described therein and to deliver same to the respective surviving co-owners named therein as sole and absolute owners thereof.
It is further ordered that this proceeding be remanded for further proceedings according to law consistent with the views herein expressed. Costs of this appeal are cast against the succession.
Reversed and remanded.
NOTES
[1] 25 La.L.Rev. 108 at 119 (1964-65); 37 Tul.L.Rev. 115 at 118 (1962-63); 37 Tul. L.Rev. 322 at 323-24 (1962-63).
[2] The issue in Tanner was the liability of the bond co-owner for state inheritance tax. The court held there was no liability. In the later case of Succession of Raborn, 210 La. 1033, 29 So.2d 53 (1946), the Supreme Court expressly overruled Tanner, but on other grounds. It pointed out that Tanner was by a divided Court of Appeal, and, while persuasive, was not binding on the Supreme Court. We do not find where the analogy of life insurance was adopted in later cases.
[3] 25 La.L.Rev. 108 (1964-65); 38 Tul.L. Rev. 372 at 383-84 (1963-64); 37 Tul. L.Rev. 115 (1962-63); 11 Loyola L.Rev. 311 (1962-63).