## PARKINSON *v.* WOOD.

1. EQUITY—ADEQUACY OF REMEDY AT LAW—FRAUD—RELEASE OF
   DOWER.
   Fraud perpetrated upon plaintiff by her late husband in pro-
   curing her release of dower rights in sale of farm would not
   afford a basis for recovery of proceeds of the sale in equity
   suit against her stepdaughter since she would have an ade-
   quate remedy at law.

2. GIFTS—UNITED STATES SAVINGS BONDS—DELIVERY.
   By reason of the Federal law governing the issuance and pay-
   ment of United States savings bonds, gifts of such bonds may
   be valid under circumstances as to actual delivery that would
   not effectuate a gift of ordinary choses in action (31 USCA,
   § 757c).

3. UNITED STATES—SAVINGS BONDS—TREASURY REGULATIONS.
   Treasury regulations in respect to the transfer of United States
   savings bonds are a proper exercise of the power given to the
   secretary of the treasury by the congress; and they accord-
   ingly have the force and effect of Federal law (31 USCA,
   § 757c).

4. SAME—BORROWING MONEY—CONTROLLING LAW.
   Under the provisions of the Federal Constitution congress has
   the power "to borrow money on the credit of the United
   States," and "to make all laws which shall be necessary and
   proper for carrying into execution" this power, such laws be-
   ing the supreme law of the land and binding upon the judges in
   every State (U. S. Const. art. 1, § 8, clause 2; art. 6, clause 2).

5. SAME—SAVINGS BONDS—STATES—PROPERTY.
   Since the capacity of the Federal government to borrow money
   depends on the inviolability of its obligation, on its ability to
   carry it out strictly in accordance with its terms, a State may
   not treat United States savings bonds, or the proceeds of their
   sale, as the property of some person other than the one whom
   the contract has designated (31 USCA, § 757c).

6. SAME—SAVINGS BONDS—STATE LAW.

Because of the supremacy of the Federal law as to United States savings bonds, and the necessity for uniform enforcement throughout the United States, a State rule has no application to the contract (31 USCA, § 757c).

7. SAME—SAVINGS BONDS—THIRD-PARTY BENEFICIARY CONTRACTS.

United States government bonds purchased and made payable in the event of death to named beneficiaries are valid contracts for the benefit of third parties (31 USCA, § 757c).

8. GIFTS—INTER VIVOS—SAVINGS BONDS.

A gift *inter vivos* may be perfected although no delivery is actually made where such gift is created by virtue of the terms of a savings bond of the United States government (31 USCA, § 757c).

9. UNITED STATES—SAVINGS BONDS—DEATH OF PURCHASER—TITLE OF BENEFICIARY.

United States savings bonds, issued to purchaser and payable on death to named beneficiary and found in purchaser's safety deposit box after his death, became the absolute property of the beneficiary named immediately upon the purchaser's death where he was survived by the beneficiary (31 USCA, § 757c).

10. GIFTS—UNITED STATES SAVINGS BONDS—POSSESSION—INTENT.

A gift of United States savings bonds to the named payee was completed at the time the donor furnished the consideration and directed the issuing officer to provide for the registration of donee, defendant daughter, as owner of the bonds, even though the donor retained physical possession of the bonds by keeping them in safety deposit box to which both he and defendant had access, where it is clear he intended to make the proceeds of the bonds available to the named payee (31 USCA, § 757c).

11. APPEAL AND ERROR—QUESTIONS REVIEWABLE—STATUTES—UNITED STATES SAVINGS BONDS.

Whether or not State statute relative to rights of payees of United States savings bonds was applicable to decision of controversy between administratrix of estate of deceased purchaser and his daughter, the payee named in such bonds, is not determined where Federal law is found controlling, although the State statute would operate retroactively, if applied (31 USCA, § 757c; Act No. 178, Pub. Acts 1945).

12. SAME—QUESTIONS REVIEWABLE—CONSTRUCTIVE TRUST.

Constructive trust as to United States savings bonds found in deceased's safety deposit box is not raised against defendant

daughter in favor of plaintiff widow, suing individually and as administratrix, where latter did not allege a constructive trust or pray for such relief and case was not presented to trial court on such theory.

13. SAME—EQUITY—ADEQUACY OF REMEDY AT LAW.—RES JUDICATA. Where denial of equitable relief is based in part upon adequacy of remedy at law, decision herein is not to be considered *res judicata* in subsequent proceedings on law side of court which plaintiff might bring.

Appeal from Branch; Jacobs (Theo T.), J. Submitted January 9, 1948. (Docket No. 44, Calendar No. 43,780.) Decided February 16, 1948.

Bill by Clara Parkinson, individually and as administratrix of the estate of George Parkinson, deceased, against Frances M. Wood to decree that certain United States Series E bonds belong to the estate of the decedent. Cross bill by defendant against plaintiff to have determination that bonds belong to cross-plaintiff and to require delivery of them. Decree for defendant. Plaintiff appeals. Affirmed.

*James M. Cleary* (*Arthur G. Lyon,* of counsel), for plaintiff.

*Harold J. Ashdown,* for defendant.

NORTH, J. This suit in chancery was brought by plaintiff, Clara Parkinson, both in her individual right and as administratrix of the estate of her husband, George Parkinson, deceased. Briefly stated, the only relief sought by plaintiff as to which the record contains any semblance of merit, is that certain United States savings bonds purchased by the deceased but payable to defendant, his daughter by a former marriage, or that the proceeds of the bonds, be decreed to be part of the assets of

the George Parkinson estate. Plaintiff's claim to relief as stated in the prayer of her amended bill is: ''That the use of the funds amounting to $3,487.50 for the purchase of the bonds in the name of Frances M. Wood, was a fraud against the rights of Clara Parkinson.''

By her cross bill defendant sought delivery to her of the bonds by plaintiff on the theory that defendant was the owner of these bonds. Defendant and cross-plaintiff had decree in the circuit court. Plaintiff has appealed.

The factual background of the alleged fraud upon which plaintiff relies is as follows. In May, 1943, George Parkinson sold a farm for $7,706.30. He agreed with plaintiff that if she would join in the conveyance (thus releasing her right of dower) the proceeds from the sale would be deposited in their names in a joint bank account. The down payment of $2,395 was so deposited June 12, 1943 by plaintiff, and about a month thereafter Mr. Parkinson signed the card held by the bank incident to the joint account. The balance of the purchase price, $5,311.30 was paid to the bank cashier for Mr. Parkinson. It was never deposited in the joint account. Instead at various times between July 27 and August 14, 1943, Mr. Parkinson purchased United States savings bonds in the amount of $4,650 for which he paid $3,487.50, evidently out of the money he had received for the purchase of his farm. Each of the bonds so purchased was made payable to defendant, Frances M. Wood. The bonds were placed in a safety deposit box rented in 1927 by Mr. Parkinson and to which he and defendant each had a key. No one except defendant and her father had access to the box; but defendant did not open the box during the time the bonds were depos-

ited therein. After the death of Mr. Parkinson these bonds were found in the safety deposit box.

Plaintiff claims that Mr. Parkinson perpetrated a fraud on her by securing her signature to the farm deed whereby she released her right of dower under their agreement that the purchase money received should be deposited in a joint bank account in their names, when, in fact, Mr. Parkinson did not so deposit the final payment, but used $3,487.50 thereof to purchase the bonds payable to the defendant. Plaintiff further claims that since defendant gave no consideration for the bonds and the deceased did not surrender possession or control of the bonds, they should be decreed to be plaintiff's property or assets of Mr. Parkinson's estate, which will be shared equally by plaintiff and defendant, he having died intestate March 12, 1944. In connection with the above it is plaintiff's claim that because of lack of delivery of the bonds a valid gift *inter vivos* was not consummated.

It is not claimed that the estate of Mr. Parkinson would be insolvent if the bonds in suit are not found to be included in the assets. Insofar as plaintiff asserts right of recovery on the ground of fraud perpetrated upon her by Mr. Parkinson, her claim for resultant damages would not give the equity court jurisdiction. As to that phase of her claim, plaintiff would have an adequate remedy at law, and recovery could not be had in this suit in equity. The trial court so held. See *Morten* v. *Zevalkink,* 304 Mich. 572.

Our review *de novo* of this record brings the conclusion that decision can be and should be based on the sole question as to whether, under the circumstances of this case, title of these United States savings bonds passed to defendant. As appears

from numerous judicial decisions, gifts of United
States savings bonds are held to be valid under cir-
cumstances as to actual delivery which, if the gifts
had been of ordinary choses in action, would not be
sustained. This has come about in consequence of
the provisions of the Federal law governing the is-
suance and payment of United States savings
bonds.*

While the question of validity of a gift on the
ground of nondelivery was not involved, nonetheless
because of the statement of the reasons in conse-
quence of which gifts of United States savings bonds
are sustained in the absence of delivery to the donee
is so plainly set forth, we quote in full the head
notes in *Harvey* v. *Rackliffe,* 141 Me. 169 (41 Atl.
[2d] 455, 161 A. L. R. 296):

"Treasury regulations in respect to the transfer
of United States war savings bonds are a proper
exercise of the power given to the secretary of the
treasury by the congress; and they accordingly have
the force and effect of Federal law.

"Under the provisions of the Federal Constitu-
tion congress has the power 'to borrow money on
the credit of the United States,' and 'to make all
laws which shall be necessary and proper for carry-
ing into execution' this power. Article 6, clause 2,
provides that these laws 'shall be the supreme law
of the land; and the judges in every State shall be
bound thereby. . . .'

"The capacity of the Federal government to
borrow money depends on the inviolability of its
obligation, on its ability to carry it out strictly in
accordance with its terms. If the State may treat
the bonds here involved, or the proceeds of their
sale, as the property of some person other than the
one whom the contract has designated, the govern-

---

* See 31 USCA, § 757c.—Reporter.

ment has thereby been prevented from carrying out the agreement into which it has entered.

"In this case there was a contract with the United States for the benefit of a third party whose rights arise solely from the contract and in no sense by reason of a grant or gift; this contract gives the beneficiary a present, vested, though defeasible interest; it is governed by Federal law and must be enforced in accordance with its letter and its spirit uniformly throughout the United States; and no State statute or rule of law may stand in the way of such enforcement.

"Because of the supremacy of Federal law a State rule has no application to this contract."

The issue of whether it is necessary to validly consummate the gift to the payee by another who purchased United States savings bonds that there must be delivery of the bonds is passed upon in *Ibey* v. *Ibey,* 93 N. H. 434 (43 Atl. [2d] 157). We quote from the head notes in the State report:

"United States government bonds purchased and made payable in the event of death to named beneficiaries are valid contracts for the benefit of third parties.

"A gift *inter vivos* may be perfected although no delivery is actually made where such gift is created by virtue of the terms of a savings bond of the United States government."

In *Myers* v. *Hardin,* 208 Ark. 505 (186 S. W. [2d] 925), there was no delivery of the savings bonds to the payee named therein. The holding as expressed in the head note in the South Western Reporter is as follows:

"United States government bonds, issued to testatrix payable on death to various named beneficiaries and found in testatrix' lockbox after her death, became the absolute property of beneficiary

named in each immediately upon testatrix' death provided beneficiary survived testatrix."

In *Inheritance Tax Division* v. *Chamberlin Estate,* 21 Wash. (2d) 790 (153 Pac. [2d] 305, 156 A. L. R. 552), the holding of the court in the particular under consideration appears from the following head note:

"A gift of war savings bonds to the named payees was completed at the time the donor furnished the consideration and directed the issuing officer to provide for the registration of the donees as owners of the bonds, even though the donor retained physical possession of the bonds (which were found in his safety deposit box after his death), where it is clear that he intended to make the proceeds of the bonds available to the named payees."

A holding by the Florida supreme court, in *Re Briley's Estate* (April 6, 1945) reported in 155 Fla. 798 (21 South. [2d] 595), is in accord with the above authorities.

In appellant's brief numerous cases are cited to the point that delivery is essential to validity of a gift *inter vivos;* but with the exception of a single case about to be noted, the cited cases do not involve gifts of United States savings bonds of the type and controlling terms here involved, and therefore are not here in point. Appellant cites *Deyo* v. *Adams,* 178 Misc. 859 (36 N. Y. Supp. [2d] 734), (1942), holding, as stated in appellant's brief, "that the proceeds of United States savings bonds purchased in the name of the decedent, payable on his death to his sister, belonged to the estate for the reason that the transaction was invalid as a gift," because decedent kept possession and control of the bonds. But the holding in the *Deyo Case* has been overruled, or at least is not in accord with a more recent,

New York decision in *Re Kalina's Will,* 184 Misc. 367 (53 N. Y. Supp. [2d] 775), (1945), which, in harmony with the courts of other States hereinbefore noted, as stated in the syllabus holds:

"The right of beneficiary to enforce payment of nontransferable United States bonds upon registered owner's death is superior to any expectant rights of registered owner's surviving spouse."

Our conclusion is that, under the circumstances of the instant case, George Parkinson by the purchase of the bonds in suit, made at his direction payable to defendant, consummated a gift of the bonds or the proceeds thereof to defendant. In reaching our conclusion we have deemed it unnecessary to refer to or rely upon Act No. 178, Pub. Acts 1945 (Comp. Laws Supp. 1945, § 9439–1, Stat. Ann. 1947 Cum. Supp. § 26.1261), which appellant contends cannot be retroactively applied in the instant case. Appellant's contention in that respect is contrary to the holding in *Re Kalina's Will, supra.* We do not herein pass upon that issue.

In part, appellant's brief is devoted to the contention that on this appeal we should find a constructive trust in her favor as to these savings bonds or the proceeds thereof. Plaintiff cannot be granted relief of that character for the reason, among others, that nothing relative to a trust is alleged in her bill of complaint nor is any such relief therein prayed. And under such circumstances, it is obvious that the case was not presented to the trial court on that claim or theory.

The decree entered in the circuit court is affirmed but with the proviso that our decision herein is not to be considered *res judicata* in any subsequent proceedings on the law side of the court brought by plaintiff herein on the theory of fraud to which

reference has herein been made. A decree will be entered in this• Court accordingly. Appellee will have costs of this Court.

Bushnell, C. J., and Sharpe, Boyles, Reid, Deth-mers, Butzel, and Carr, JJ., concurred.