*In re* FREEDLAND ESTATE

KLAPP *v* BEVERLY HALL FOUNDATION

1. UNITED STATES—TREASURY REGULATIONS.

Regulations issued by the Secretary of the Treasury of the United States, insofar as they are consistent with the statutory powers delegated to him, have the force of Federal law, and thus become the supreme law of the land.

2. DESCENT AND DISTRIBUTION—UNITED STATES TREASURY BONDS—APPLICABILITY OF STATE LAWS.

State laws of inheritance and succession are inapplicable to United States treasury bonds.

3. UNITED STATES—TREASURY BONDS—RIGHTS OF PARTIES.

The rights and obligations of the parties whose names appear on United States treasury bonds are determined by the Treasury regulations, because the purchase of bonds creates a contract between the Federal government and the purchaser.

4. UNITED STATES—TREASURY BONDS—PAY-ON-DEATH BENEFICIARIES —ESTATES.

United States Treasury regulations forbid the naming of a corporation as a pay-on-death beneficiary of a United States treasury bond; only a natural person may be named as such a beneficiary.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 42 Am Jur, Public Administrative Law §§ 99, 102.
[2–5, 7] Judicial decisions involving United States war savings bonds.    168 ALR 243, s. 173 ALR 550.
[3, 7] 43 Am Jur, Public Securities and Obligations § 165.
[6, 7] 54 Am Jur, Trusts § 218 *et seq.*
[6] Imposition or declaration of constructive or resulting trust in United States savings bonds.    51 ALR2d 163.

5. UNITED STATES—TREASURY BONDS—PAY-ON-DEATH BENEFICIARY
   —CORPORATIONS.

   A corporation named as the pay-on-death beneficiary of a United
   States treasury bond receives neither legal title to the bond
   nor to the proceeds from its sale, because such a pay-on-death
   registration is invalid and the invalidity of the pay-on-death
   registration left the owner of the bond as the sole owner.

6. TRUSTS—CONSTRUCTIVE TRUST—INTENT OF PARTY.

   A constructive trust may be used as a means of fulfilling the
   intent of a party where such intent has been frustrated through
   no fault of the party herself.

7. TRUSTS—CONSTRUCTIVE TRUST—UNITED STATES TREASURY BONDS
   —PAY-ON-DEATH BENEFICIARY—CORPORATIONS.

   A nonprofit corporation was properly awarded a constructive
   trust in the proceeds of the sale of United States treasury
   bonds where the corporation had been named as the pay-on-
   death beneficiary of the bonds even though such a non-natural
   person could not be made a pay-on-death beneficiary, where
   there was clear and convincing evidence of the intent of the
   deceased owner to make a gift of the bonds to the corporation,
   and that intent was frustrated only by the deceased's mistaken
   belief that he had done all that was necessary to effectuate
   a valid bequest.

Appeal from Genesee, Earl E. Borradaile, J.
Submitted Division 2 December 15, 1971, at Lansing.
(Docket No. 11072.)   Decided February 24, 1972.
Leave to appeal denied, 387 Mich 796.

Petition in probate court by Kittredge R. Klapp,
as administrator of the estate of William C. Freed-
land, for authorization to include proceeds of cer-
tain United States bonds, claimed by Beverly Hall
Foundation, in the inventory of Freedland's estate.
The probate court awarded the proceeds of the bonds
to Beverly Hall Foundation.   Plaintiff appealed to
circuit court.   Affirmed.   Plaintiff appeals by leave
granted.   Affirmed.

*Neithercut & Neithercut,* for plaintiff.

*Gault, Davison & Bowers,* for defendant.

Before: QUINN, P. J., and J. H. GILLIS and VAN VALKENBURG,* JJ.

J. H. GILLIS, J. The appellant is the administrator of the estate of William C. Freedland who died possessed, *inter alia,* of $11,500 in series H United States Treasury bonds. These bonds were purchased by the decedent in 1961 and registered as follows: "William C. Freeland P.O.D. Beverly Hall Foundation". Beverly Hall Foundation is a nonprofit corporation organized under the laws of Pennsylvania. The administrator of the estate of William C. Freedland informed Beverly Hall Foundation of the registration and informed it of his intention to cash the bonds and treat them as an asset of the estate. The administrator proceeded to cash the bonds and petitioned probate court for an order authorizing the amendment of the inventory to include the proceeds of these bonds. Beverly Hall Foundation filed an objection to the court's entry of such order contending it was the owner of said proceeds by virtue of the registration, or, in lieu thereof, praying that said administrator be determined to hold said proceeds as constructive trustee for Beverly Hall Foundation. The probate court awarded the proceeds to the foundation and on appeal the circuit court, on January 30, 1970, affirmed. The parties are now before us upon grant of leave to appeal.

The appellant has consistently maintained that, under the treasury regulations controlling the issu-

_____
* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

ance of United States bonds, a corporation may not be named as a P.O.D. beneficiary. The courts below were not convinced that such a prohibition could be distilled from the regulations and read the language of the regulations in a light favorable to the Beverly Hall Foundation. Both parties have agreed that the relevant treasury regulations involved are those contained in the ninth revision of the department's circular No. 530, issued December 23, 1964. The foundation alternatively argues, should the regulations not be found to support its position, for a constructive trust upon the proceeds.

We begin our discussion of this case with a few observations concerning the status to be accorded to the treasury regulations. The authority of Congress to issue bonds derives first from the US Const, art I, § 8:

"The Congress shall have power * * * to borrow money on the credit of the United States * * *."

Congress, through 65 Stat 26 (1951), 31 USC 757(c), has passed this power on to the Secretary of the Treasury:

"The Secretary of the Treasury, with the approval of the President, is authorized to issue, from time to time, through the Postal Service or otherwise, United States savings bonds and United States Treasury savings certificates, the proceeds of which shall be available to meet any public expenditures authorized by law, and to retire any outstanding obligations of the United States bearing interest or issued on a discount basis. The various issues and series of the savings bonds and the savings certificates shall be in such forms, shall be offered in such amounts, subject to the limitation imposed by section 757b of this title, and shall be issued in such manner and subject to such terms and condi-

tions consistent with subsections (b)–(d) of this section, and including any restrictions on their transfer, as the Secretary of the Treasury may from time to time prescribe."

The regulations issued by the Secretary of the Treasury, insofar as they are consistent with the statutory powers delegated to him, have the force of Federal law, and, by virtue of the "supremacy clause", US Const, art VI, become the supreme law of the land. *Yiatchos v Yiatchos,* 376 US 306; 84 S Ct 742; 11 L Ed 2d 724 (1964); *Free v Bland,* 369 US 663; 82 S Ct 1089; 8 L Ed 2d 180 (1962); *United States v Janowitz,* 257 US 42; 42 S Ct 40; 66 L Ed 120 (1921); *Ervin v Conn,* 225 NC 267; 34 SE 2d 402 (1945); *Harvey v Rackliffe,* 141 Me 169; 41 A2d 455; 161 ALR 296 (1945); *In re Cochran Estate,* 398 Pa 506; 159 A2d 514 (1960); *Parkinson v Wood,* 320 Mich 143 (1948).

State statutes inconsistent with treasury regulations properly promulgated must yield. *Yiatchos, supra.* Thus, state laws of inheritance and succession are inapplicable to United States bonds for fear that making such bonds subject to state law would "lead to a great diversity of rules regulating title and redemption and would subject the entire financing plan of the Federal Government to exceptional uncertainty by making identical transactions subject to the vagaries of the several states and would tend to retard the sale of these bonds". *Succession of Tanner,* 24 So 2d 642 (La App, 1946).

The purchase of United States bonds has often been held to create a contract between the United States Government and the purchaser. *Ervin v Conn, supra; In re Chase Estate,* 82 Idaho 1; 348 P2d 473 (1960). Under this contract theory a co-owner or P.O.D. beneficiary has the status of a third-party beneficiary. *In re Cochran Estate, su-*

*pra; In re DiSanto Estate,* 142 Ohio St 223; 51 NE 2d 639 (1943); *Parkinson* v *Wood, supra.* The terms of the contract oblige the Government to pay the proceeds of such bonds to the purchaser or the named beneficiary. *Roman* v *Smith,* 228 Ark 833; 314 SW2d 225 (1958); *Tanner* v *Ervin,* 250 NC 602; 109 SE2d 460 (1959). Attempts by the primary registrant to bequeath the bonds to another does not defeat the named beneficiary's rights under the contract. *Davies* v *Beach,* 74 Cal App 2d 304; 168 P2d 452 (1946); *Edds* v *Mitchell,* 143 Tex 307; 184 SW2d 823 (1945); *Ex Parte Little,* 259 Ala 532; 67 So 2d 818 (1953). Likewise attempts by the primary registrant to make gifts of the bonds *inter vivos* will not defeat these rights, *Moore's Administrator* v *Marshall,* 302 Ky 729; 196 SW2d 369; 168 ALR 241 (1946); and as to gifts *causa mortis,* see, *Fidelity Union Trust Co.* v *Tezyk,* 140 NJ Eq 474; 55 A2d 26; 173 ALR 546 (1947).

These cases and others suggest the necessity of looking to the treasury regulations, as a contract, to determine the respective rights and obligations of the parties whose names appear upon a United States bond. Occasionally the rules prescribed by the Secretary of the Treasury will be modified by equitable considerations, a factor to be discussed further *infra.* Generally, however, the courts will not wander too far afield from the text of department circular 530. Our present problem is deciding what the regulations say, so that we may afterwards discover from the regulations the rights of the parties involved. To this end we are aided by the general rules of statutory construction.

The courts below recognized the importance of the treasury regulations to this issue, and also sought to interpret the regulations in accord with

a general rule of statutory construction. They specifically found that the word "may" in an important section of the regulations was indicative of a permissive, rather than restrictive, rule concerning corporations as P.O.D. beneficiaries. That section, 315.6(a), reads:

"Registration of bonds is restricted on original issue, but not on authorized reissue, to persons (whether natural persons or others) who are:

"(1) residents of the United States, its territories and possessions, the Commonwealth of Puerto Rico, and the Canal Zone;

"(2) citizens of the United States temporarily residing abroad; and

"(3) civilian employees of the United States or members of its Armed Forces, regardless of their residence of citizenship.

"However, other natural persons may be designated as coowners or beneficiaries with natural persons of the above classes, whether on original issue or reissue, except that registration is not permitted in any form which includes the name of any alien who is resident of any area with respect to which the Treasury Department restricts or regulates the delivery of checks drawn against funds of the United States or any agency or instrumentality thereof."

Yet a closer reading of this section makes one wary of placing too much emphasis upon the word "may". For reasons we shall discuss, we believe that the lower courts were straining the interpretation of the regulations when they concluded that a corporation could be a P.O.D. beneficiary upon the rather shallow footing of one ambiguous word. We are disposed to give an interpretation to the regulations in accord with that urged by the appellant. We do so upon an analysis of the regulations as a whole rather than relying upon any single section.

The regulations provide for, and carefully distinguish, two basic types of bond registration. One type is designed for use by corporations, trust companies, fiduciaries, and so forth—in general for persons other than "natural persons". The regulations allow only a single ownership form for these bonds, which means that on bonds that are issued to corporations only one named owner shall appear, the corporation itself. The corporate owner of a United States savings bond may not (or shall not) join another person, natural or not, as a coowner or beneficiary. Section 315.7(b).

A separate type of bond registration is provided for the use of "natural persons". Section 315.7(a):

"Subject to any limitations or restrictions contained in these regulations on the right of any person to be named as owner, coowner, or beneficiary, bonds may be registered in the following forms:

"(a) *Natural persons.*—In the names of natural persons in their own right.

"(1) *Single owner.* Example: John A. Jones 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.

"(2) *Coownership form—two persons (only).* In the alternative as coowners. Examples: John A. Jones 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 or Mrs. Ella S. Jones. Mrs. Ella S. Jones or John A Jones 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.

"No other form of registration establishing coownership is authorized.

"(3) *Beneficiary form—two persons (only).* Examples: John A. Jones 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 payable on death to Mrs. Ella S. Jones. John A. Jones 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 P.O.D. Mrs. Ella S. Jones.

"'Payable on death' may be abbreviated to 'P.O.D.' as indicated in the last example. The first person named is hereinafter referred to as the owner and the second named person as the beneficiary."

The appellee would point to the last sentence of the above section as allowing any "person" to be named

a beneficiary. It is pointed out that in § 315.11 there is the following definition of person:

> "The term 'person' for purposes of this section shall mean any legal entity and shall include but not be limited to natural persons, corporations * * * and trust estates."

But this definition is self limiting, serving only "for the purposes" of § 315.11. We think that the first sentence of subsection 315.7(a) is more definitive of the meaning to be given to words in that subsection. We note especially that the phrase "names of natural persons" is in plural form, indicative that the "names" of coowners and beneficiaries, as well as the name (singular) of a sole owner, are to be "names of natural persons" rather than the names of *any* persons, natural or not.

Returning to the section mentioned previously upon which the courts below placed so much reliance, we can now suggest a different interpretation. In light of the different ways of registering bonds which are available to a natural person, the use of the word "may" in that section is not so bizarre as to be conclusive as to any general policy favoring or disfavoring corporate beneficiaries. All § 315.6 (a) can be understood to mean is that a natural person may register a bond in his own name, or he *may*, if he so desires, register bonds in his name with another natural person designated as a coowner or beneficiary (providing that they all meet the residency requirements enumerated in that section).

Admittedly all that has been noted up to this point does not definitely exclude corporations as P.O.D. beneficiaries. There is not to be found in the 1964 edition of these regulations a clear and concise limitation to the effect that, "only a natural per-

son may be designated as a beneficiary".[1] On the other hand, there is to be found no statement clearly allowing corporations to be named P.O.D. beneficiaries. Rather, what can be read from these sections is an emphasis upon "natural persons" whenever beneficiaries are referred to, which is more logically consistent with the exclusion, as opposed to inclusion, of corporations.

Other sections lend further support to an inference excluding corporations as beneficiaries. Sections 315.65 through 315.66 of the regulations come under the bond print heading "Subpart N—Two Natural Persons as Owner and Beneficiary". The regulations contain no subpart heading indicative of a bond issuance to a natural person as owner with a nonnatural person as beneficiary. However, under this subpart, § 315.65(b) ambiguously reads:

"(1) The bond will be reissued on a duly certified request of the owner: * * *

"(iii) To eliminate the beneficiary, to substitute another person as beneficiary, or to name another person as coowner, if the request of the owner is supported by the beneficiary's duly certified consent to elimination of his name or by proof of his death * * * ."

Just about any inference can be read out of this language, so we will not struggle with it. More important is the section which follows, § 315.66:

---

[1] Such a limitation existed in the treasury regulations from 1937 to 1964. In a letter dated June 21, 1954, a commissioner of the United States Treasury Department explained the necessity for this limitation so as to prevent an owner from naming as a beneficiary an organization, which, by its very structure or nature, would not readily allow a change in beneficiaries at a later time. How valid this reason is, in light of the fact that the owner of a bond, registered to him and another, can cash it at anytime without liability to the beneficiary, we cannot determine. There has been presented no evidence or explanation as to why this provision was left out of the 1964 regulations. We decline to speculate.

"If the registered owner dies without the bond having been presented and surrendered for payment or authorized reissue and is survived by the beneficiary, upon proof of death of the owner the beneficiary will be recognized as the sole and absolute owner, and payment or reissue will be made *as though the bond were registered in his name alone (see subpart L)*." (Emphasis supplied.)

Subpart L is headed "Natural Person as Sole Owner". We will look further into subpart L presently. However, it would seem that if a beneficiary could be a person other than a natural person, then § 315.66 should not only refer us to subpart L, but also, as an alternative, to subpart Q, which concerns private organizations as owners of bonds (§§ 315.80 through 315.88). But § 315.66 does not so cross refer.

Bonds may be obtained upon an original issuance or upon a reissue. In the latter procedure, used whenever an owner wishes to change the registration form of his bonds, the old bonds are returned to the Treasury Department and new bonds, containing the new registration, are tendered. The regulations impose certain restrictions upon reissue; some have already been noted in § 315.65 under subpart N. The restrictions placed upon the reissue of bonds held by a sole owner, under subpart L, specifically § 315.56, are particularly interesting:

"A savings bond registered in the name of a natural person in his own right may be reissued upon appropriate request by him * * * upon presentation and surrender during his lifetime, for the following purposes:

"(a) Addition of a coowner or beneficiary. *To name another natural person as coowner or as beneficiary*." (Emphasis supplied.)

Here we have the expressed and unequivocal intent of the Secretary of the Treasury set out before

us that a P.O.D. beneficiary under subpart L must be a natural person. Thus if person A purchases bonds as a sole owner and later desires to name a beneficiary, he may not, under the reissue provisions of subpart L, name anyone other than a natural person as a beneficiary. We cannot see why one who makes an original purchase of bonds should be any less restricted; in fact, we must read this same restriction into the sections concerning the original issue of bonds in order to give validity to subpart L. Otherwise person A can defeat the restrictive intent of subpart L by first cashing his bonds and then, with the proceeds, purchase new bonds in a beneficiary form inconsistent with the restrictions. We cannot believe that a section of the regulations as definite as is 315.56 was meant to be rendered meaningless by a forced and inconsistent interpretation of its sister sections.

We are thus persuaded to read into the treasury regulations a general policy against the naming of a corporation as a P. O. D. beneficiary. We cannot point to any one section, nor, as did the courts below, to any one word, which clearly states this policy, but we can reach our conclusion upon a careful consideration of each of the sections mentioned herein, as well as others, and upon a view of the general scheme the Treasury Department has created for the issuance of bonds. We need not go into the reasons for this policy, for once having determined what the Federal law is, we are bound to follow it in the present case. However, recognizing that United States Treasury bonds stand outside the general state laws of distribution, many of which are designed for the protection of heirs,[2] we do sug-

---

[2] Some examples, MCLA 702.12; MSA 27.3178(82) providing for distribution of a portion of the decedent's estate to a child born after and not provided for in a will; MCLA 702.13; MSA 27.3178(83) concerning children inadvertently omitted from a will; and, of course,

gest that a strict interpretation of the treasury regulations is to be favored. In the present case this means limiting the persons who might be named as P.O.D. beneficiaries to only natural persons.

Having navigated through the labyrinth of the regulations in order to reach this conclusion, we look back to find that the questions raised on appeal have not yet been answered. Although under our interpretation of the regulations Mr. Freedland should not and could not have named the Beverly Hall Foundation as a P.O.D. beneficiary, the fact of the matter is, he did. Under the treasury regulations no interest in the bonds themselves could pass to the appellee.[3] But the bonds have long since been cashed and transformed into proceeds. We must now consider whether or not the appellee is entitled to any interest in these proceeds.

Normally proceeds arising from the liquidation of United States Treasury bonds registered in beneficiary form are payable to the estate of the deceased owner if at the time of his death the P.O.D. beneficiary is not entitled to ownership of the bonds, as is the case, for example, when the beneficiary predeceases the owner. *Myers* v *Hardin*, 208 Ark 505; 186 SW2d 925 (1945). Under the regulations the appellee was never entitled to the bonds as an

---

there are always the dower rights to be considered.   MCLA 702.69; MSA 27.3178(139).

[3] Under § 315.8 a bond registered in an unauthorized form is considered invalid. The appellee has argued that since the Treasury Department, through the issuing Federal Reserve Bank, allowed Mr. Freedland to register these bonds naming the Foundation as the beneficiary, and continued to pay interest to Mr. Freedland during his life, that we should conclude from this that the Department recognized the validity of the Foundation's beneficiary interest. However, these facts are neutralized by the further fact that after Mr. Freedland's death the Treasury Department allowed the administrator of his estate to cash the bonds. Had the Treasury Department recognized the validity of the Foundation's interest, then under their regulations, §§ 315.35 and 315.66, no payment could have been made to the administrator.

owner, the beneficiary clause being invalid. Section 315.8. In practical effect Mr. Freedland held his bonds under a sole ownership registration. When a sole owner dies without directing the disposition of his United States Treasury bonds,[4] the regulations direct that payment be made to the administrator of his estate. Sections 315.70 and 315.72. Thus no legal title to the bonds nor to the proceeds therefrom vested in the Beverly Hall Foundation.

The appellee, however, urges us to consider his equitable interests so as not to defeat the obvious intent of Mr. Freedland to make some sort of bequest to the foundation. The appellee has directed our attention to, and our own research has disclosed, numerous cases where courts have imposed constructive or resulting trusts upon the proceeds of United States Treasury bonds. *Yiatchos* v *Yiatchos,*[5] *supra; Roman* v *Smith, supra; Chase* v *Leiter,* 96 Cal App 2d 439; 215 P2d 756 (1950); *In re Chase Estate, supra; Oster* v *Oster,* 414 Ill 470; 111 NE2d 319 (1953); *Thibeault* v *Thibeault,* 147 Me 213; 85 A2d 177 (1952); *Ibey* v *Ibey,* 93 NH 434; 43 A2d 157 (1945); *In re Barletta Estate,* 2 Misc 2d 135; 150 NYS2d 479 (1956); *Tanner* v *Ervin, supra; Katz* v *Lockman,* 356 Pa 196; 51 A2d 619 (1947); *Makinen* v *George,* 19 Wash 2d 340; 142 P2d 910 (1943). In all of these cases constructive or resulting trusts were imposed to prevent fraud or inequitable results.

In these above-mentioned cases the creation of a constructive or resulting trust was encouraged by an obvious equity resting with the party in whose favor the trust was to run—generally the monies

---

[4] We cannot read into the present facts an attempt by a sole owner, Mr. Freedland, to make a gift of the bonds *inter vivos,* there being no delivery of the bonds to the Foundation, nor a testamentary gift in accordance with the general laws of probate.

[5] Justice Clark, joined by Justice Douglas, dissenting.

with which the bonds were purchased could be traced to some valuable consideration provided by the prevailing parties. In the present case such equities are equal, neither the administrator[6] nor the foundation had given anything towards the purchase of the bonds by Mr. Freedland from which an equitable obligation to reimburse, upon a theory of unjust enrichment, might now arise. However, the facts do reveal a clear and convincing intent on the part of Mr. Freedland to make a gift to the foundation which was frustrated solely by the legal technicalities of the treasury regulations.[7] That such intent was not carried out may be attributed to a "mistake" by Mr. Freedland, a mistake encouraged by the issuing bank. Mr. Freedland mistakenly believed that he could name the foundation as the recipient of $11,500 worth of bonds by naming the foundation as a P.O.D. beneficiary. An anonymous clerk of the issuing bank obviously shared this mistaken belief and complied with Mr. Freedland's request that the bonds be so registered. No doubt Mr. Freedland died convinced by this compliance that he had done all that was necessary and proper to effectuate a valid bequest to the foundation.

Michigan has for many years accepted the doctrine of constructive trusts as a means of fulfilling the intent of a party where such intent has been frustrated through no fault of the party himself. In *Ellis* v *Secor*, 31 Mich 185 (1875), the Supreme Court considered the case of a dying woman who left beside her bed a slate upon which she had

---

[6] In a sense, insofar as the administrator represents the estate of Mr. Freedland, his claim to the bonds upon this approach is the stronger one, as the bonds were purchased by Mr. Freedland during his life by monies within, and removed at the expense of, his estate.

[7] We have seen how difficult it is even for the Court to interpret the regulations, how much more so for the inexperienced layman!

written " 'I wish Dr. L. S. Ellis to take possession of all, both personal, real and mixed. *Rachael Hill.* I am so sick, I believe I shall die; look in valise.' " The Court awarded, upon a trust theory, the securities found in the valise to Dr. Ellis, saying at 193:

"There can be no doubt concerning the meaning of the memorandum left by the deceased. It is unconditional and unequivocal. We think it clear that Rachael Hill did all she could to create a gift *causa mortis* and fully intended it, and that her written declaration should prevail as a valid appointment of the uses indicated, as fully as if there had been a manual delivery of the securities."

In *Love* v *Francis,* 63 Mich 181 (1886), in which a promissor on a note made payable to the deceased's heirs four years after his death sought a determination as to whether he was liable to the heirs or to the administrator of the estate, the Court held, at 191:

"By directing the note to be made payable to his heirs, he [the deceased] placed the title in them at once, and it was unimportant in whose possession or custody the paper might remain. Whoever might hold such possession would do so in trust for them, and they alone could enforce payment."

The Court in *Love* further approved of an Indiana case:

"In *Wyble* v *McPheters,* 52 Ind 393, where A. delivered several United States bonds to B., with directions for the latter to give the same to certain of his children at his death, B. received them, and agreed to execute the trust. It was held that this was a sufficient delivery to constitute a gift *inter vivos,* and that, upon the death of A., an action would lie against B. in favor of the children of A. to compel him to execute the trust, and also against

the administrator of A., to whom B. had delivered the bonds."

We see no reason, in the light of the fact that under certain recognized circumstances a constructive trust can be imposed upon the proceeds of United States savings bonds, why such an action should not be taken here in order to carry out the clear intent of Mr. Freedland.

Affirmed. Costs to appellee.

All concurred.