**73 So.2d 312**

## AUSTIN v. SUCCESSION OF AUSTIN.

No. 41275.

April 26, 1954.

Rehearing Denied May 31, 1954.

Weber & Weber, Brumfield, Hebert & Rush, Baton Rouge, for appellant.

Kaufman, Anderson & Leithead, Lake Charles, for appellee.

MOISE, Justice.

The plaintiff filed an opposition to the homologation of the First and Final Account of Horace R. Austin, Testamentary Executor. The executor filed an exception of no cause of action, which exception was maintained by the district court and judgment entered dismissing the action instituted by the plaintiff or the oppositions filed by her. From this judgment, plaintiff prosecutes this appeal.

The chronological listing of the facts of the case has been so ably presented by the judge of the district court in his reasons for judgment that we will adopt that offering as our own:

"Charles Henry Austin departed this life on Sept. 7, 1951, while a resident of Calcasieu Parish, Louisiana, leaving a last will and testament which was duly probated by this Court. In accordance with the provisions of that will, Horace R. Austin, one of the decedent's surviving sons, was appointed and qualified as testamentary executor.

"On August 11, 1952, the testamentary executor filed his 'First and Final Account,' and notice of the filing of this account was ordered published. Before the account came up for homologation, however, a petition was filed by Mrs. Mai Marie Austin, surviving widow of the decedent, opposing the account filed by the executor and the plan of distribution therein set out, urging several alternate grounds as a basis for that opposition. To this petition the executor filed an exception of no cause of action, which exception

was regularly scheduled for argument on Oct. 2, 1952. On that date, however, with consent of the Court counsel for Mrs. Austin filed a supplemental and amended petition. Counsel for all parties thereupon stipulated (a) that the exception of no cause of action theretofore filed by the executor would apply to the supplemental and amended petition as well as to the original petition; and (b) that a plea of prescription could be filed in behalf of the executor at a later date, but that oral arguments on that plea would be presented by counsel on that date, Oct. 2, 1952, which arguments subsequently thereto would be supplemented by written briefs, and that upon the filing of such briefs both the exception of no cause of action and the plea of prescription would be considered as having been submitted.

"In accordance with the stipulations so entered into, oral arguments were presented on that exception and plea of prescription. The plea of prescription was duly filed by the executor on Oct. 7, 1952, and written briefs were supplied thereafter. At the time counsel for petitioner filed their original brief, however, there was presented to the Court a 'Second Supplemental and Amended Petition,' which they proposed to file in behalf of petitioner, Mrs. Mai Marie Austin. The Court took under advisement the question of whether petitioner should be permitted to further amend the petition at that stage of the proceeding, and later concluded that she should be permitted to do so. Accordingly, an order was signed permitting the pleading to be filed, and the amendments accomplished by filing this second supplemental and amended petition were considered in disposing of the matters now at issue.

"The issues before the Court at this time, therefore, are those presented by the exception of no cause of action and the plea of prescription filed by the executor to the original and supplemental petitions of Mrs. Austin. A number of other pleadings have been filed, but it is not necessary to list or to consider them in disposing of the questions here presented.

"The petitioner alleges, and for the purpose of this exception it is considered as true, that decedent and Mrs. Mai Marie Austin were married on July 27, 1926. On March 11, 1936, however, Mrs. Austin filed a suit against decedent in this Court seeking a judgment decreeing a separation from bed and board between them * * *. An examination of the record reveals that all proceedings in the separation suit were regular. Both Mrs. Austin and the decedent were represented by counsel, inventories were made of all property owned by either of the parties by Court appointed notaries and com-

petent appraisers and several issues were presented in the trial of the case, including the amount of the debts owed by the community. After the case was tried on its merits, judgment was rendered on April 23, 1936."

The above judgment awarded Mrs. Austin a separation from bed and board and ordered a dissolution of the community of acquets and gains and a partition of its effects.

"Thereafter, but on the same day, the parties to that suit entered into a partition agreement which purports to partition all of the community property. By joint petition, the parties through their respective counsel sought to have this partition agreement approved and homologated, and accordingly in response to the prayer of that joint petition another judgment was rendered in the same proceeding on April 23, 1936, which reads as follows:

" 'It Is Therefore Ordered, Adjudged and Decreed that the partition of the community as settled before N. F. Anderson, Notary Public, between the said Mrs. Mai Marie Austin and Charles H. Austin, be and the same is hereby homologated and approved by this Court.

" 'It Is Further Ordered, Adjudged and Decreed that the injunction granted at the issuance of said suit and confirmed in the judgment of separation, be and the same is here ordered recalled and cancelled.

" 'It Is Further Ordered, Adjudged and Decreed that the judgment for alimony pendente lite having been fully satisfied, is hereby ordered cancelled and of no further legal effect.

" 'It Is Further Ordered that there is reserved to the said Mrs. Mai Marie Austin any legal rights she may have in the future to claim any further alimony if entitled to same under the laws of Louisiana.'

"Petitioner further alleges that thereafter, during the month of May, 1936, she and the said Charles H. Austin again began living together as man and wife, and they continued to live together from that time until the death of the latter. At the time the partition agreement was entered into and homologated by judgment of the Court it is alleged that decedent's separate estate was valued at approximately $14,000.00. The inventory and appraisement made after his death, however, reveals that his property at that time was valued at $196,841.83.

"In his last will and testament, defendant bequeathed to a trustee the sum of $50,000.00, out of which his widow, Mrs Austin, was to be paid $350.00 per month as long as she lives, and in addition thereto he bequeathed to Mrs. Austin the use of the home and its furnish-

ings as long as she maintains her residence there, all taxes and insurance to be paid out of the estate. These are the only bequests made to the widow.

"Although the executor, in his account, proposes to carry out these provisions of the will, he apparently considers that all of the property left by decedent belonged to his separate estate, and the executor does not propose to pay or deliver to Mrs. Austin any portion of the estate over and above the legacies contained in the will. Mrs. Austin, on the other hand, contends that she is entitled to certain portions of the estate or to further sums of money in addition to the legacies her claims being based on several alternate grounds."

Counsel for plaintiff contends that she, as the surviving spouse of Charles Henry Austin, is entitled to be decreed the owner of an undivided one-half of all property accumulated by them from the date of their marriage because (a) the partition agreement entered into between Charles Henry Austin and Mrs. Mai Marie Austin should be set aside annulled; or (b) a reconciliation after a separation from bed and board decree re-establishes the community of acquets and gains.

The inventory taken at the time of the separation from bed and board shows assets which total $53,188.78 and liabilities in the amount of $28,186.86. In the partition agreement, Mrs. Austin received cash of

$10,500 and thirty shares of Calcasieu Building and Loan Stock having a par value of $100 per share and she was also given a Dodge automobile and a piano which had belonged to the community.

An examination of this record reveals that there was no fraud, and the record is barren of any proof of the deceased husband's forcing the wife to sue for separation or to enter into a partition agreement, as alleged by her in her petition. Of course, we, as Judges, are bound to take as true, for the purposes of the exception of no legal right or cause of action, all well pleaded allegations of the petition, but we are not bound to accept the plaintiff's conclusions of law. Herring v. Breedlove, 222 La. 1088, 64 So.2d 441; Succession of Gladney, 223 La. 949, 67 So.2d 547; Breaux v. Laird, 223 La. 446, 65 So.2d 907.

LSA–Revised Statutes 13:3601 states:

"The plaintiff in his petition shall state his cause of action articulately, that is to say, he shall, so far as practicable, state each of the material facts upon which he bases his claim for relief in a separate paragraph".

A reading of this petition convinces us that the plaintiff bases her cause of action on mere conclusions of the pleader.

In Latham v. Latham, 216 La. 791, 44 So. 2d 870, 871, this Court refused to annul a judgment of separation form bed and board on the grounds of fraud and ill-prac-

tice. In that case we made this pronouncement:

"The allegations in the petition that the judgment was obtained through fraud and ill practices are mere conclusions of the pleader. No facts are alleged upon which the conclusion can be based. The mere conclusion of the pleader unsupported by facts does not set forth a cause or right of action."

Then, again, In re Phoenix Building & Homestead Association, 203 La. 565, 14 So. 2d 447, 451, we said:

"It is so well settled that it requires no citation of authorities that a mere conclusion of the pleader, unsupported by any facts, fails to disclose a cause or right of action. Consequently, since the liquidator failed to allege any facts upon which he based his conclusion that the judgment of April 13, 1938, was obtained through fraud or ill practices, it is our opinion that his petition failed to disclose a cause or a right of action and was properly dismissed by the trial judge." Succession of Stafford, 191 La. 855, 186 So. 360; LeBlance v. Danciger Oil & Refining Co., 218 La. 463, 49 So.2d 855."

Under the provisions of Article 2446 of the LSA–Civil Code, both the husband and the wife were at liberty to enter into a partition agreement after the judgment of separation from bed and board. There is no statement in the agreement which would indicate that Mrs. Austin was precluded from claiming alimony, and in the judgment of separation from bed and board such a right to so claim was specifically reserved to her. Both of the parties were represented by counsel. The partition agreement was signed by both husband and wife, and that agreement specifically states:

"It is agreed and understood that the parties in making this settlement agree that each party receives his respective value in the community of acquets and gains formerly existing between the said parties, and that the said Mrs. Mai Marie Austin is relieved from the payment of any and all of the community debts so as to make an equal division of said property."

This partition was signed in April of 1936.

Article 155 of the LSA–Civil Code provides:

"Separation from bed and board carries with it separation of goods and effects."

Article 123 of the LSA–Civil Code holds:

"The woman separated from bed and board has no need in any case of the authorization of her husband, as this separation carries with it not only a separation of property, but a dissolution of the community of acquets and gains."

Article 136 of the LSA–Civil Code reads:

"Separation from bed and board does not dissolve the bond of matrimony, since the separated husband and wife are not at liberty to marry again; but it puts an end to their conjugal cohabitation, and to the common concerns, which existed between them."

In Succession of LeBesque, 137 La. 567, 68 So. 956, 957, this Court recognized the failure of the legislature to provide for a superinducement of the community after a reconciliation and stated that we were without authority to legislate. The Court held:

"There is no law which says that a reconciliation of the spouses superinduces a partnership or community of acquets or gains, as is superinduced by marriage. The court is without authority to legislate upon the subject; and as it has been twice decided that the community of acquets and gains is not re-established by the reconciliation of the parties, the property acquired after a separation from bed and board by either or both spouses remains the separate property of him or her who acquired it."

In Cotton v. Wright, 214 La. 169, 36 So. 2d 713, we find a very pertinent statement:

"A decree of separation from bed and board carries with it a dissolution of the community which is not re-established by the reconciliation of the parties. It was pointed out in Crochet v. Dugas, 126 La. 285, 52 So. 495, that Article 1451 of the Code Napoleon, authorizing the re-establishment of the community by notarial act between the parties, had not been incorporated in the Louisiana Civil Code. Since that date a statute has been enacted, Act 200 of 1944, amending Article 155 of the Revised Civil Code authorizing the re-establishment of the community, upon reconciliation of the spouses, by notarial act. Since the spouses have not re-established the community in the manner prescribed by law, it stands dissolved."

Act 200 of 1944 was amended by Act 304 of 1950, LSA–C.C. art. 155. This act reads:

"Separation from bed and board carries with it separation of goods and effects. Upon reconciliation of the spouses, the community may be re-established by husband and wife jointly, as of the date of the filing of the suit for separation from bed and board, by an act before a notary and two witnesses, which act shall be recorded in the conveyance office of the parish where said parties are domiciled but which act shall be without prejudice to rights validly acquired in the interim."

Therefore, only by the privilege conferred in the act of 1950 can the community be re-established, and it must be done with the forms and solemnities of the law as that act has prescribed.

Mrs. Austin testified that her husband told her that he had re-established the community, but she submits no act showing such re-establishment—notarial or otherwise. Therefore, when these parties became reconciled after the decree of separation from bed and board, they did not re-establish the dissolved community.

An alternate contention is made by the wife that she is entitled to the ownership of an undivided one-half interest in and to all the property which was accumulated by them since their marriage, on the basis of an equitable ownership, and to bolster up that contention her counsel cites the case of Delamour v. Roger, 7 La.Ann. 152. In the Delamour case, plaintiff was the defendant's concubine, and the court found that this woman had contributed capital, skill and application to the accumulation of property, and that the real property in this city standing in the name of the defendant was purchased with the profits of their business as hairdressers and keepers of a perfumery and fancy store. The Court held:

"The reasonable effect of Article 2804 of the Civil Code, is to render the participator in concubinage incapable of recovering, as a universal partner, one-half of the property acquired, although her labor may have contributed nothing towards its accumulation; but, when her capital and labor has contributed a full share towards the result, equity entitled her to half the property acquired."

Counsel for plaintiff cites the case of Prieto v. Succession of Prieto, 165 La. 710, 115 So. 911. That case was one where there was a bigamous marriage, and the wife was permitted to judicially ascertain her claim as a partner. The case was remanded, and we are not informed, from the reports, of its outcome.

Where parties marry according to the forms and solemnities of the law and where their rights are settled by the express provisions of the Code, there can be no appeal to equity, which is no more or no less than "an appeal * * * to * * reason * * * where positive law is silent." Article 21 of the LSA–Civil Code. The duty of the wife is fully prescribed in Articles 119 and 120 of the Code. The duty of the husband is fixed that he should support and care for her, and since there has been a partition agreement and a dissolution of the community by forms of law, we see no authority for such to be exercised under the principle of equitable ownership. This is a refinement, which, as Judges, we cannot ordain.

It is further contended, in the alternative, that Mrs. Austin is entitled to the ownership of one undivided one-half of the property on the quantum meruit basis. There is no proof of this verbal contract between the plaintiff and her late husband, and we know of no law where a wife may

recover from the estate of her deceased husband on a quantum meruit basis.

Plaintiff further makes a contention based on the allegations that for the years 1946, 1947, 1948, 1949, 1950 and 1951, from the deceased's alleged United States Income Tax Returns, that his income was community income. We cannot hold that a mere statement in an income tax return, as to income, would convert the income into such a status.

Plaintiff's last contention is that as a widow she is entitled to a widow's one-fourth under Article 2382 of the LSA–Civil Code. This contention certainly does not present a cause of action, because of a partition already made of the community and because of the bequest made to her under the terms of the husband's last will and testament.

The total value of decedent's estate was $196,841.83. By the will, $50,000 was left in trust, from which she is to receive $350 per month, and she was in addition bequeathed the use of the home place as long as she maintained her residence there, all taxes and insurance to be paid by the executor.

For these reasons, the judgment of the trial court maintaining the exception of no cause of action filed by the Testamentary Executor to the original and the supplemental and amended petitions and the second supplemental and amended petition is affirmed, and plaintiff's cause of action or oppositions are dismissed at her cost.