JASPER E. JONES, Judge.
Appellants, Richard A. Griffin, Mary Griffin Middlebrooks, and Irma Jeter Griffin, appeal a judgment rejecting their demands to annul the last will and testament of decedent, Richard Allen Griffin, Sr., and rejecting their demands to invalidate a document reconstituting the community between decedent and his surviving widow, Mrs. Eva Bowles Griffin.
Richard Allen Griffin, Sr. died March 10, 1980, leaving Eva Bowles Griffin as his *1180 surviving widow and Richard A. Griffin, Jr., Mary Griffin Middlebrooks, and James Richard Griffin, his children by a former marriage, as his forced heirs.
Decedent had married Eva Bowles on February 7,1932. She sued him for a separation on November 10, 1951. There was a judgment of separation rendered on November 21, 1951. About two years after the separation the parties reconciled and lived together until Richard Allen Griffin, Sr.’s death.
On February 26, 1980 decedent made a statutory will wherein he left the disposable portion of his estate to Eva Bowles Griffin and made her the executrix of his will. The will left the forced portion of decedent’s estate to his three children.
On March 6, 1980 decedent and his wife executed a document before a notary and two witnesses styled “Matrimonial Agreement Between Richard Allen Griffin and Eva Bowles Griffin Re-Establishment of the Community of Acquets and Gains Between Them.”
Following the death of Richard Allen Griffin, Sr., his widow, Eva Bowles Griffin, probated his last will and testament and qualified as executrix of his estate. In this succession proceeding Irma Lucille Jeter Griffin, widow and heir of James Richard Griffin who had died subsequent to the death of his father, Richard Allen Griffin, Sr., and Richard A. Griffin, Jr. and Mary Griffin Middlebrooks, decedent’s children, sued Eva Bowles Griffin to annul decedent’s will and to invalidate the document that reconstituted the community between her and decedent.
Appellants alleged that the will was null because:
“A. The testator lacked the capacity to make such a testament on February 26, 1980 in that he had been sick, senile and unable to fully comprehend the consequences of his acts for several months due to his advanced age.”
Appellants alleged that the document reconstituting the community was null because:
“Mr. Griffin lacked the necessary capacity to contract on March 6, 1980 in that he was physically and mentally incapacitated as not to understand the nature of his acts due to his illness and advanced age.”
Decedent was 86 years of age at the time he signed the documents sought to be annulled, and these documents were signed by him while he was in the hospital for treatment of his terminal illness.
At trial no witnesses were called, only the testimony taken by deposition of decedent’s two treating physicians, his surviving widow, and the two witnesses and notary on each of the documents was placed into evidence. All of the deponents testified that during the time frame when the two documents were signed that though decedent was seriously ill he was alert and understood what was going on around him. The notary and witnesses on each of the documents signed by decedent stated that at the time he signed them he understood and approved the contents and purposes of the will and the agreement reconstituting the community.
There was no evidence offered by appellants which supported their contentions that decedent was incapacitated at the time he signed the two documents which they sought to annul.
The trial judge found as a fact that appellants failed to prove that decedent was without capacity to make the will and execute the agreement re-establishing the community. The evidence fully supports the trial judge’s conclusions.
Appellants do not argue decedent’s incapacity to execute the documents in brief on appeal. They contend in brief that the document re-establishing the community has only the effect of creating a community between decedent and his surviving widow for the period between March 6, 1980 when it was signed and March 10, 1980, the date decedent died.
Appellants rely on the case of Corkern v. Corkern, 270 So.2d 209 (La.App. 1st Cir. 1972). In this case a husband and wife were judicially separated April 7, 1958 and *1181 executed an agreement to re-establish the community January 27, 1970. The agreement contained the following provisions:
“... which act shall be without prejudice to separate property rights and all other property rights of Jimmie W. Corkern and Ladonias R. Corkern validly acquired in the interim between April 7, 1958 and January 27, 1970.” Id. p. 210.
At the same time this document was signed, a separate instrument was executed between the parties that contained the following declaration:
“... Said appearers, Jimmie W. Corkern and Ladonias Rogers Corkern, further declare unto me, Notary, that this acknowl-edgement in no way affects property rights or other rights of either party validly acquired between the interim of April 7, 1958 and January 27, 1970, and Ladonias Rogers Corkern further acknowledges and declare to me Notary, that all property, immovable, corporeal, incorporeal, and movable, consisting partially and without limitation to all dairy equipment, farm equipment, stocks and other securities acquired by Jimmie W. Corkern between April 7, 1958 and January 27, 1970 are his separate and para-phernal property.” Id. at 210.
The husband sued for a separation on February 16, 1970 and amended his suit to demand a divorce on April 23, 1970 which was granted May 13,1970. The wife thereafter sued for a community property settlement contending that all properties acquired during the marriage was community property. The trial court rejected her contentions concluding that only that property acquired subsequent to the January 27,1970 act re-establishing the community belonged to the community between the parties. On the wife’s appeal the court affirmed the judgment stating:
“The notarial instruments executed by the litigants herein on January 27, 1970, clearly negate any intent on the part of plaintiff husband to relinquish his individual and separate property rights in the property which was acquired by him following the initial termination of the community of acquets and gains in 1958 and until the execution of the notarial instruments on January 27, 1970. The instruments admit of no other possible construction, as evidenced by the emphasized excerpts therefrom reproduced above.” Id. p. 213.
The agreement re-establishing the Griffin community reads as follows:

“MATRIMONIAL AGREEMENT BETWEEN RICHARD ALLEN GRIFFIN AND EVA BOWLES GRIFFIN RE-ESTABLISHMENT OF THE COMMUNITY OF ACQUETS AND GAINS BETWEEN THEM.

BEFORE ME, the undersigned Notary Public, personally appeared RICHARD ALLEN GRIFFIN, SR. and his wife, EVA BOWLES GRIFFIN, each of them having been duly sworn by me, stated that:
1. They were married February 7th, 1932 in Bossier Parish, Louisiana and shortly thereafter they established their matrimonial domicile in Caddo Parish, Louisiana, where both are still domiciled.
2. That on November 10, 1951 in suit Number 109,926, entitled Eva Bowles Griffin vs. Richard Allen Griffin, First Judicial District Court, Caddo Parish, Louisiana Eva Bowles Griffin filed a petition for a judgment of separation from bed and board from Richard Allen Griffin, and the same being recorded in Conveyance Book 652, Page 715 of the Clerk’s office of Caddo Parish, Louisiana. A judgment of separation from bed and board was granted on November 21st, 1951.
3. Approximately two years later Richard Allen Griffin, Sr., and Eva Bowles Griffin reconciled and have lived together as man and wife ever since.
4. That by this matrimonial agreement Richard Allen Griffin, Sr., and his wife, Eva Bowles Griffin, mutually agree to re-establish the community of acquets and gains between them, as of the date November 10th, 1951, of the filing of the original petition for a judgment of separation from bed and board, in which ac *1182 tion the judgment was rendered by the court on November 21st, 1951.”
The provisions of LSA-C.C. art. 155 which authorized the parties to re-establish the community provides:
“The judgment of separation from bed and board carries with it the separation of goods and effects and is retroactive to the date on which the original petition was filed in the action in which the judgment is rendered, but such retroactive effect shall be without prejudice (a) to the liability of the community for the attorney fees and costs incurred by the spouses in the action in which the judgment is rendered, or (b) to rights validly acquired in the interim between commencement of the action and recordation of the judgment. Upon reconciliation of the spouses, the community may be re-established by matrimonial agreement as of the date of filing of the original petition in the action in which the judgment was rendered.” [our emphasis].
The provisions of this article clearly empowered the decedent and his wife to place in their agreement the following provision:
“4. That by this matrimonial agreement Richard Allen Griffin, Sr., and his wife, Eva Bowles Griffin, mutually agree to re-establish the community of acquets and gains between them, as of the date, November 10th, 1951 of the filing of the original petition for a judgment of separation from bed and board, in which action the judgment was rendered by the court on November 21st, 1951.”
The provisions of Paragraph 4 unequivocally establish the intent of decedent and his wife to re-establish their community on the date that it was initially dissolved. There is no provision in the Griffin agreement similar to the provisions contained in the agreements construed in the Corkern, supra, case limiting the effect of the agreement to property acquired by the parties subsequent to the date of the agreement. For this reason the Corkern case does not support appellants’ contention as to the effective date on which the community was re-established.
We conclude that the Griffin community exists as though it had never been dissolved with the property rights flowing from the community being just as they would have been had there never been a judicial separation between Richard Allen Griffin, Sr. and Eva Bowles Griffin.
Appellants contend in brief that the community property agreement is in fact a will wherein decedent attempts to evade the forced heirship law by giving his wife xk of his estate. They then contend that the second will dated March 6th annuls the provisions of the statutory will dated February 26th. These contentions are totally without merit. A review of the community property document establishes that it is an agreement to re-establish the community prepared pursuant to LSA-C.C. art. 155 and is not a will.
The trial judge in his written reasons for judgment made statements indicating an adjudication that specific property belonged to the re-established community. The signed judgment appealed rejected appellants’ demands, but properly did not contain any adjudication as to the status of any particular property as there were no demands asserted by the litigants for a determination of the status (separate or community) of any of the property left by the decedent.
The judgment is AFFIRMED at appellants’ cost.