515 So.2d 468 (1987)
Kaylynn Kathleen Kern CONNER
v.
James Sydney CONNER, Jr.
No. CW 86 1566.
Court of Appeal of Louisiana, First Circuit.
October 14, 1987.
*469 Rykert O. Toledano, Jr., Toledano & Courtney, Covington, for plaintiff-appellant.
Peter J. Garcia, Covington, for defendant-appellee.
Before GROVER L. COVINGTON, C.J., and SAVOIE and LeBLANC, JJ.
GROVER L. COVINGTON, Chief Judge.
This matter is before this Court on a writ application[1] by Kaylynn Kathleen Kern Conner seeking the exercise of our supervisory jurisdiction to review an interlocutory judgment on a rule to determine the termination date of the community formerly existing between the parties. In the judgment on the rule the trial court fixed the termination date of the community formerly existing between Kaylynn Kathleen Kern Conner and James Sydney Conner, Jr. to be September 25, 1978, and assigned reasons. The basis for the trial court determining that date as the termination date *470 was that the suit for separation was filed on that date and it resulted in a judgment; and that although the parties had reconciled, they had not executed an authentic act to reestablish the community as required by former Article 155 of the Louisiana Civil Code, which was in effect at that time.
The facts giving rise to the present matter are that Mrs. Conner initially filed suit for separation from her husband on September 25, 1978, resulting in a judgment of separation on January 26, 1979. Subsequently, the husband sued for divorce, on April 6, 1981, based on the parties living separate and apart in excess of one year without reconciliation.[2] In the meantime, on April 30, 1979, the parties had entered into a purported act of reestablishment by an act under private signature during their reconciliation.
The issues presented by relator, Mrs. Conner, are:
1. Whether the community was effectively reestablished by the execution of a purported Act of Re-Establishment (sic) in 1979.
2. Whether subsequent amendment to Article 155 of the Louisiana Civil Code rendered the purported Act of Reestablishment effective, even though it was not in authentic form.
3. Should the purported Act of Re-Establishment (sic) be regarded as "a legal obligation" of the parties?
4. Is Mrs. Conner entitled to recognition of her community interest as a "putative community"?
5. Whether Mrs. Conner is entitled to the benefit of one-half of the community for the period prior to the filing of the Petition for Divorce, as a result of "her innocent and justifiable reliance on the legal efficacy" of said Act of Reestablishment.
6. Whether Mr. Conner is "legally and equitably estopped from repudiating his obligations under said Act of Reestablishment."

ISSUE 1

Validity of Purported Act of Reestablishment
The trial court had before it a rule to determine the date of the termination of the community. The rule was incidental to the pending suit for partition of the community and was placed before the trial court by stipulation of counsel in order "to facilitate the resolution" of the partition suit.[3]
Mover in rule, James S. Conner, Jr., asserted that the termination date of the community was September 25, 1978. Opponent in rule, Kaylynn Kathleen Kern Conner, argued that the termination date was April 6, 1981.
The purported Act of Reestablishment was executed on April 30, 1979 in the form of an act under private signature. At that time Article 155 of the Louisiana Civil Code required the parties to execute an authentic act in order to reestablish the community upon reconciliation.[4] The trial judge, in his Reasons for Judgment, held that the purported Act of Reestablishment, not having been executed in authentic form, was invalid, and the community was not reestablished. This judgment is consistent with the jurisprudence. See Freeman v. Freeman, 430 So.2d 673 (La.App. 2 Cir.1983), writ denied, 435 So.2d 449 (La.1983), and the cases therein cited.
*471 In Freeman, 430 So.2d at 676, the Court said:
Under Civil Code Article 155, and the reported cases interpreting the article, it is firmly established that a judgment of separation terminates the community of acquets and gains between a husband and wife, and upon reconciliation of the spouses, reestablishment of the community was possible before January 1, 1980 only by execution of an authentic act recorded in the conveyance records of the parish where the couple was domiciled and after January 1, 1980 by a matrimonial agreement. Strict compliance with this article is required. [Footnote omitted]
We thus hold that the purported Act of Reestablishment, not being in authentic form, is invalid. Said Act did not effectively reestablish the community between the parties.

ISSUE 2

Retroactivity of Amendment to Article 155
By Act 525 of 1985,[5] upon reconciliation of the spouses, the community is automatically reestablished between the spouses, as of the date of filing of the original petition in the action in which the judgment was rendered, unless the spouses have executed a non-reestablishment agreement before reconciliation.[6]
Recognizing that the purported Act of Reestablishment was invalid under the former Article 155, the relator contends that the amended Article is to be given retroactive effect.
There is no merit in this contention. The amendment affects substantive rights since it creates a new obligation where no such obligation existed before. The amendment is not legislation which is procedural, remedial or curative in nature so as to be applied retroactively; it is substantive, as stated above. See Manuel v. Carolina Casualty Insurance Company, 136 So.2d 275 (La.App. 3 Cir.1961).
Article 155, as amended, changes the law and establishes a new rule which automatically reestablishes the community in the absence of a matrimonial agreement of non-reestablishment. It thus establishes new substantive rights and obligations. Cf. Cahn v. Cahn, 468 So.2d 1176, 1181 (La.1985). Article 543, as amended, established new substantive rights and therefore was not given retroactive application.
Although Article 155 was previously amended in 1979 to allow the reestablishment of the community by "matrimonial agreement" rather than by authentic act, this amendment has not been given retroactive effect. See Freeman, 430 So.2d at 678.
As a general rule in Louisiana, a law can prescribe only for the future. LSA-C.C. art. 8. Our jurisprudence has consistently interpreted Article 8 to mean that legislation which affects substantive rights may *472 not be accorded retroactive application unless it contains language expressly indicative of legislative intent to make it retroactive, and then only when constitutional guarantees such as due process, vested rights and inviolability of contracts will not be adversely affected thereby. Pounds v. Schori, 377 So.2d 1195 (La.1979); Gachez v. Gachez, 451 So.2d 608 (La.App. 5 Cir. 1984), writ denied, 456 So.2d 166 (La.1984). For the foregoing reasons, we hold that the 1985 amendment to Article 155 does not render the purported Act of Reestablishment effective. The amendment is not to be applied retroactively.

ISSUE 3

Legal Obligation of the Parties
Relator next contends that the parties to the purported Act of Reestablishment "evidenced their consent lucidly by its formation and execution, therefore, it must be given the effect and validity of a legal obligation." There is no merit to this contention. Their erroneous belief as to the effect of said Act characterizing their property once again as community property is contrary to the positive law. An error of law can never be alleged as the means of acquiring property. Freeman, 430 So.2d at 677.

ISSUE 4

Putative Community
Relator next contends that she, "in complete good faith, believed and acted pursuant to the belief that the community regime was actually reestablished" by the purported Act of Reestablishment. The answer to this argument is found in our discussion under Issue 3. An "error of law" does not protect Mrs. Conner. In any event she was the legal wife of Mr. Conner, not a "putative wife" as she contends in her brief. A "putative wife" is not given greater rights than the lawful wife, so to label her as such gains her nought.

ISSUE 5

Entitlement to One-Half of the Community
In this argument, relator again argues that she is entitled to the benefit of one-half of the community for the period prior to the filing of the Petition for Divorce, as a result of "her innocent and justifiable reliance on the legal efficacy" of said Act of Reestablishment. This argument has been answered by the discussions under the previous issues. The record shows that the spouses reconciled following the judgment of separation. Although a reconciliation vitiates the judgment of separation in all other respects, it does not vitiate the termination of the community. Efferson v. Efferson, 394 So.2d 1294, 1296 (La.App. 1 Cir.1981), writ denied, 397 So.2d 1358 (La.1981).

ISSUE 6

Theory of Estoppel
In sum, this argument is that Mr. Conner, being an attorney, is estopped from contesting the validity of the purported Act of Reestablishment. This is a specious argument. Relator has been represented at all stages of the various lawsuits by experienced counsel of her own choosing. Mr. Conner has not represented her as an attorney. We do not find Sarpy v. Sarpy, 354 So.2d 572 (La.App. 4 Cir.1977), writ denied, 356 So.2d 436 (La.1978) apposite to the instant litigation. Moreover, title to property cannot be established by estoppel. Monk v. Monk, 243 La. 429, 144 So.2d 384 (1962); Freeman, 430 So.2d at 680.
The case of Anderson v. Anderson, 506 So.2d 200 (La.App. 5 Cir.1987), relied upon by relator, dealt with the husband being estopped from raising a defense for more than two years. The case is not in point.
For the foregoing reasons, we affirm the judgment of the trial court at relator's costs.
AFFIRMED.
NOTES
[1] When this matter was first presented to this Court, we denied the writ on the grounds that the relator had a proper remedy by review on appeal of the final judgment on the partition. The supreme court, without expressed reasons, granted relator's writ application and remanded the matter to this Court for briefing, argument and opinion.
[2] The wife filed another suit for separation on September 26, 1979, but it did not result in judgment of separation, and was still pending when the husband sued for divorce.
[3] It does not appear to have accomplished the recited purpose.
[4] The text of Article 155 in effect at the time of these occurrences provided:

Dissolution of community upon separation; re-establishment after reconciliation.
Separation from bed and board carries with it separation of goods and effects. Upon reconciliation of the spouses, the community may be re-established by husband and wife jointly, as of the date of the filing of the suit for separation from bed and board, by an act before a notary and two witnesses, which act shall be recorded in the conveyance office of the parish where said parties are domiciled but which act shall be without prejudice to rights validly acquired in the interim.
[5] Acts 1985, No. 525 amended and reenacted Article 155 to read as follows:

A. The judgment of separation from bed and board carries with it the separation of goods and effects and is retroactive to the date on which the original petition was filed in the action in which the judgment is rendered, but such retroactive effect shall be without prejudice (1) to the liability of the community for the attorney fees and costs incurred by the spouses in the action in which the judgment is rendered, or (2) to rights validly acquired in the interim between commencement of the action and recordation of the judgment.
B. Upon reconciliation of the spouses, the community shall be reestablished between the spouses, as of the date of filing of the original petition in the action in which the judgment was rendered, unless the spouses execute prior to the reconciliation a matrimonial agreement that the community shall not be reestablished upon reconciliation. This matrimonial agreement shall not require court approval.
C. Reestablishment of the community under the provisions of this Article shall be effective toward third persons only upon filing notice of the reestablishment for registry in accordance with the provisions of Civil Code Article 2332. The reestablishment of the community shall not prejudice the rights of third persons validly acquired prior to filing notice of the reestablishment nor shall it affect a prior community property partition between the spouses.
[6] By Act 711 of 1979, effective January 1, 1980, the Article was amended to require a "matrimonial agreement" rather than by authentic act.